Filed 2/2/17; pub. & mod. order 3/6/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Tal.W., et al., Persons Coming Under the Juvenile Court Law. | |
| MENDOCINO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br>       Plaintiff and Respondent, <br><br> v. <br><br> S.W., <br><br>       Defendant and Appellant. | A148171 <br><br> (Mendocino County Super. Ct. Nos. SCUK-JVSQ 15-17227, 15-17228, 15-17229) |

S.W. (Father) appeals from the juvenile court's findings at the six-month review hearing that reasonable reunification services were provided to him and that active efforts were made to prevent the breakup of the Indian family.  We reverse and remand.

BACKGROUND

In May 2015, the Mendocino County Department of Social Services (the Department) filed a Welfare and Institutions Code section 300[1] petition with respect to Tal.W. (born 1998), Tas.W. (born 2002), and Tar.W. (born 2006) (collectively, Minors).  The petition alleged Minors' mother, K.W. (Mother), had substance abuse and mental

---

[1] All undesignated section references are to the Welfare and Institutions Code.

1

health issues rendering her unable to care for Minors, and that Father's whereabouts were unknown.[2] The detention report stated Mother and Minors were enrolled members of the Hopland Band of Pomo Indians (the Tribe). At the detention hearing, Mother informed the court that Father was Minors' father, she and Father married in 1997, and they were still married although Mother had filed for divorce in 2009. The last she had heard about Father's whereabouts was that he was incarcerated in Florida. Tal.W., who was present at the hearing, told the juvenile court she would like to have contact with Father if the Department were able to locate him. The juvenile court detained Minors, declared the case governed by the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.), and directed the Department to try to contact Father. The Department subsequently located Father in a Florida jail and he requested counsel and services.

At the September 16, 2015 jurisdiction hearing, the Department's social worker testified Father had felony convictions for forgery in 1985, burglary in 2004, possession of a firearm in 2009, and possession of marijuana and cocaine in 2014, for which he had been sentenced to one year in jail. She further testified Father was now out of jail. Father's counsel submitted certificates indicating that while incarcerated Father had completed 12 substance abuse classes and a dog training program. The juvenile court sustained an amended allegation as to Father that he "has a pattern of criminal behaviors that includes a drug-related arrest and conviction in 2014 that severely impairs his ability to care for and protect his children."

A September 2015 disposition report stated Father spoke to the Department social worker in early September. Father, then 48 years old, first smoked marijuana when he was 8 and began using methamphetamine and heroin when he was about 20. He reported "us[ing] hard drugs off and on for years." He and Mother were romantically involved for 15 years. He was currently living in Florida with his parents and was unemployed. The report further stated: "as to [Father] it is not in the children's best interest to offer family

_____

[2] The petition was also filed with respect to Minors' half-sister. We omit background facts relating to the half-sister and to Mother, except as relevant to Father's appeal.

reunification services as he does not have a close relationship with his three daughters who, by his own admission, he hasn't seen in more than five years nor spoken to in at least two years.  Additionally [Father] has engaged in criminal activity nearly his entire adult life, which would endanger his children.  I do not[,] however, feel it would be detrimental to the children for them to have supervised telephone contact with [Father]."  The Department did not recommend bypassing services and the social worker "advised [Father] she'd like him to attend Narcotics Anonymous meetings and parenting classes in his area and asked that he look into what resources may be available to him, in addition to the Social Worker looking into available services."  No case plan was attached to the report.  At a hearing prior to disposition, Father's counsel objected that the Department asking Father to identify services was "not appropriate.  That's the job of the social worker.  There's no case plan. . . . This needs to be done in a case plan for -- specific services in Florida need to be provided."  The juvenile court agreed, noting the Department stated it was looking into services and "perhaps by the continued hearing they can specifically identify those services and make specific referrals."

Prior to the disposition hearing, the Department filed a case plan.  As to Father, the case plan listed two objectives: "Show that you know age appropriate behavior for your children" and "Do not break the law.  Avoid arrests and convictions."  A description was provided for the first objective: "Complete a series of Parenting Classes which will be identified by yourself and/or the Social Worker, who is to approve classes you may identify.  Additionally, regularly participate in classes and/or groups which will support your sobriety, such as A.A. or N.A. meetings."  The case plan provided for Minors to have one weekly supervised telephone visit with Father, upon their request.

At the October 13, 2015 disposition hearing, Father's counsel objected to the case plan as "insufficient for him being out of state. [¶] I've talked to county counsel and the social worker about identifying specific parenting classes, the name of the program in Florida.  And that needs to be formulated and put in his case plan. [¶] Right now it's just identify a parenting class with your social worker's input, take it and participate in a sobriety program.  It doesn't call for him to have a drug treatment assessment, random

3

drug testing; anything of that nature." The juvenile court adopted the Department's recommendation that Father be provided with reunification services, but continued the hearing with respect to Father's case plan to allow the Department to submit "a more specific case plan that includes services that will assist the father in reunifying and consider how visitation should look, given it's between California and Florida at this point."

On November 3, 2015, the Department filed an updated case plan as to Father. For the objective involving age appropriate behavior for Minors, the case plan stated: "Sign up and attend the Duval County Family Preservation Program FAST Program through Family Support Services of North Florida, Inc.," and "[a]ttend all aspects of the program: in-home counseling - anger mgmt - substance abuse treatment. - domestic violence education" with "90% attendance." No contact information for the program was provided. The case plan also added a third objective to maintain relationships with Minors, which provided for Father to have weekly telephone visits, permitted him to write Minors letters via the social worker, and allowed social media or video contact at the Department's discretion.

At the November 4, 2015 continued hearing, Father's counsel voiced several objections: the identified program "is very vague" and does not indicate its length; Father had not been assessed as to his need for anger management and domestic violence services; and the plan lacked drug testing and housing services. The Department responded that the Florida agency did not respond to the Department's requests for "having a referral, what's involved with their program," and noted Father was on parole "so he's probably drug testing through them so we can probably get something through them." The Department also stated Father was not returning the social worker's calls. At the conclusion of the hearing, the juvenile court directed Father's case plan "be rerun with specifics as to what the in-home counseling, how long that's going to take place. Is that a parenting component? . . . [¶] . . . What the anger management is or if it's simply like a parenting, discipline with confidence, that kind of thing certainly would be appropriate. Substance abuse treatment, what it consists of, and include testing protocols.

4

Domestic violence education, simply be assessed to determine if there is a need and comply with the recommendation. [¶] Add a housing component, provide appropriate housing and, to the extent that it's not specifically addressed, parenting classes. I believe [Father] has not been actively parenting his children for a period of time, and I believe that would benefit him to have classes to address their developmental needs and [Tal.W.]'s special needs.[3] So that will be the plan and if there's any problems with the plan, any party can calendar it for a court hearing." No subsequent hearing was calendared prior to the six-month review hearing.

In reports filed in advance of the six-month review hearing, the Department stated a new social worker was assigned to the case two weeks after the November 2015 hearing. The new social worker was told the previous social worker would be updating Father's case plan, but the previous social worker did not do so. On January 7, 2016, the social workers agreed that the new social worker would revise the case plan. The same day, the new social worker called Father, informed him she would be sending a revised case plan, and discussed arranging a telephone visit with Tas.W. and Tar.W. Later in January, the social worker called Father and told him his new case plan was coming; he requested it be emailed to him. On January 26, the Department emailed Father a copy of the case plan.

The case plan provided a telephone number for the Duval County Family Preservation Program FAST Program but otherwise provided no details about the content or length of the program.[4] Under the objective to avoid arrests and convictions, the case plan directed Father to contact "Hubbard House" and "enroll in the First Steps Program." A telephone number was provided but there was no information about the content or length of the program. The visitation objective remained the same as the prior version. Drug testing was not part of the written case plan, although the Department's reports

---

[3] Tal.W. suffers from depression, anxiety, and social phobia.

[4] The Department's report stated the program "is designed to address development of children and typical behaviors."

5

stated it was in the process of contracting with a Florida provider and drug testing would begin after the review hearing.

Father had one telephone call with Tas.W. and Tar.W. in January. Although the call was supervised, the Department provided no information about the call. Father requested more calls but apparently none were arranged, although the Department stated regular phone visitations would begin after the review hearing. Father had contact with Tal.W. on social media and phone calls initiated by Tal.W.

On February 16, the Department called Father, who said he was not participating in services at this time. The social worker spoke to Father again on February 18 and March 22.[5] There is no evidence Father participated in services prior to the six-month review hearing. The Department recommended continuing services to Father.

At the April 14, 2016 six-month review hearing, Father's counsel argued reasonable services were not provided, citing the delay in creating Father's revised case plan and the failure to provide drug testing or regular phone visitation. The Department acknowledged the delay but argued it was reasonable given the circumstances that Father was out-of-state and that a new social worker was assigned in the middle of the case. The juvenile court found reasonable services had been provided. The court also found Father had not complied with the case plan and the Department made active efforts to prevent the breakup of the Indian family, and ordered continued reunification services for Father with weekly telephone visits.

---

[5] The Department report setting forth the substance of these calls was not filed until the morning of the six-month review hearing. The juvenile court sustained Father's objection to the communications contained in the late-filed report. We omit the excluded evidence.

DISCUSSION

I. *Reasonable Services*

Father first argues no substantial evidence supports the juvenile court's finding that he was provided with reasonable reunification services. We agree.[6]

" ' "Reunification services implement 'the law's strong preference for maintaining the family relationships if at all possible.' . . ." . . . The department must make a " ' "good faith effort" ' " to provide reasonable services responsive to the unique needs of each family. . . . "[T]he plan must be specifically tailored to fit the circumstances of each family . . . , and must be designed to eliminate those conditions which led to the juvenile court's jurisdictional finding. . . ." . . . The effort must be made to provide reasonable reunification services in spite of difficulties in doing so or the prospects of success. . . . The adequacy of the reunification plan and of the department's efforts to provide suitable services is judged according to the circumstances of the particular case. . . . "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult." ' " (*In re K.C.* (2012) 212 Cal.App.4th 323, 329–330.) " 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' " (*In re T.G., supra,* 188 Cal.App.4th at p. 697.) We review the reasonable services finding for substantial evidence. (*Ibid.*)

---

[6] "[T]he reasonable services finding contained within the order made at the six-month review hearing is adverse to [Father's] parental interest in reunification. The finding and order made at the six-month review hearing is therefore appealable under section 395." (*In re T.G.* (2010) 188 Cal.App.4th 687, 696; but see *Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1152–1156 (*Melinda K.*) [reasonable services finding at six-month review hearing not directly appealable where juvenile court also found parent complied with case plan and found a substantial probability the minor would be returned to parent during the next six-month period].)

7

We agree with Father that the Department failed to provide reasonable services. The initial case plan filed prior to disposition failed to identify any service providers and instead placed the burden on Father to locate services. The November case plan identified one program but provided no contact information or instructions about how Father could enroll in services. Only in late January—more than three months after the disposition hearing—was Father provided with contact information for two specific service providers.

Despite taking more than half of the review period to develop, the belated case plan failed to address all of the problems leading to Minors' removal from Father's custody. Father had recently been incarcerated for a drug offense, he admitted a long history of substance abuse, and the initial case plan included a direction to participate in sobriety groups. Yet the January case plan did not identify sobriety or substance abuse treatment as an objective or include *any* assessment or services related to this issue. Father was not drug tested once during the review period, despite the juvenile court's direction at the November hearing that the case plan include "testing protocols."[7] Similarly, Father was living with his parents and the Department provided no assessment of whether his housing was appropriate for Minors, yet the case plan failed to include any housing services, despite the juvenile court's direction that such services be included.

As for the services that were included in the case plan, the Department provided inadequate information to determine whether they were responsive to the objectives of learning parenting skills and avoiding criminal activity.[8] Although the juvenile court requested specifics about the content and length of identified programs, the only such information provided was a statement in the Department's report that the Duval County

---

[7] Although the Department indicated at the November hearing that Father might be taking drug tests as part of his parole, there is no indication that the Department determined whether such testing was taking place.

[8] Father's brief refers to the websites of the two programs identified in the January case plan and argues Father was not eligible for the programs and the programs were not responsive to Father's needs. This information was not before the juvenile court and we decline to consider it.

program "is designed to address development of children and typical behaviors." There was no explanation of whether the program also included domestic violence, anger management, or substance abuse components, as was indicated in the previous version of the case plan. Nor was there any indication whether the Department had assessed Father's need for domestic violence services, as the juvenile court had directed. The Department provided no description of the Hubbard House program and how it will help Father avoid criminal activity. There is also no indication as to whether either of the identified programs will help Father with parenting Tal.W.'s special needs, despite the juvenile court's direction that such services be included. It is "the social worker's job to maintain adequate contact with the service providers and accurately to inform the juvenile court and [the parent] of the sufficiency of the enrolled programs to meet the case plan's requirements." (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1347.) The Department did not do so.

Finally, Father was afforded only *one* telephone visit with Tar.W. and Tas.W. during the six-month period, despite his requests for more and the case plan's provision for weekly calls. " 'Visitation is a critical component, probably the most critical component, of a reunification plan.' " (*In re T.G., supra,* 188 Cal.App.4th at pp. 696–697.) The Department offered no explanation below about why more phone calls were not set up. In this court, the Department suggests the problem was Father's failure to stay in contact with the Department. However, there is no indication the Department tried to set up telephone visits in November or December. Once the Department began contacting Father in January they communicated on several occasions, yet the Department apparently made no attempt to set up any more telephone visits until the eve of the six-month review hearing. The provision of a single visit during the six-month review period was not reasonable. (See *Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60, 73–74 [finding reasonable services not provided where parent afforded two visits during three-month period].)

To be sure, as the Department argues, Father's location out of state rendered the Department's ability to provide services more difficult. If the delay in preparing the

9

revised case plan were the only problem, it might be excused by this factor. However, Father's out-of-state location does not excuse the Department's failure to identify substance abuse and housing as service objectives, failure—after three months of delay—to provide information about the two identified programs, and failure to set up more than one telephone visitation with Minors.

The Department also emphasizes Father's lack of involvement in services once he was provided with contact information for specific programs. The record does not indicate Father took any steps to contact the two referrals in the case plan. We acknowledge that "[r]eunification services are voluntary, and cannot be forced on an unwilling or indifferent parent." (*In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1220; see also *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5 ["The requirement that reunification services be made available to help a parent overcome those problems which led to the dependency of his or her minor children is not a requirement that a social worker take the parent by the hand and escort him or her to and through classes or counseling sessions."].) However, "[a parent's] difficulty meeting the case plan's requirements does not excuse the agency from continuing its effort to bring [the parent] into compliance with the court's orders." (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451.) Father's lack of participation had no bearing on the three-month delay in providing him with contact information for service providers, the failure to provide any services relating to substance abuse and housing, and the failure to establish regular visitation. Father's lack of involvement, while discouraging, does not excuse the Department from complying with its obligation to provide reasonable services.[9]

_____

[9] The parties both raise arguments regarding court hearings: Father argues he was not properly noticed for certain hearings, and the Department notes Father failed to appear at any hearing, despite the ability to do so telephonically. Neither party explains the significance of these arguments to the question of whether Father was provided with reasonable services, and we see none in this case. The Department also suggests Father is to blame for failing to bring the case plan's inadequacies to the court's attention before the six-month review hearing. However, the November hearing provided the Department with ample notice about what should have been included in the case plan. In any event, "[a] parent is 'not required to complain about the lack of reunification services as a

10

We acknowledge that the likelihood of reunification with Father may be low. But Father was nonetheless entitled to reasonable services. "The effort must be made to provide reasonable reunification services in spite of difficulties in doing so or the prospects of success." (*In re Taylor J., supra,* 223 Cal.App.4th at p. 1451; accord, *Christopher D., supra,* 210 Cal.App.4th at p. 74.) "A forecast of failure could not provide an excuse for refusing to try." (*In re K.C., supra,* 212 Cal.App.4th at p. 332.) Because no substantial evidence supports the juvenile court's finding that reasonable services were provided, we will reverse the finding.[10]

## II. *Active Efforts*

Father next contends the juvenile court erred in finding the Department made active efforts to prevent the breakup of the Indian family. We again agree.

ICWA requires a court, before terminating parental rights to an Indian child, find "that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." (25 U.S.C. § 1912(d); see also §§ 361.7, 366, subd. (a)(1)(B) [juvenile court shall make active efforts finding at review hearings].) "Under California law, there is no significant difference between 'active efforts' required by ICWA and 'reasonable services' required in both ICWA and non-ICWA cases . . . . '[W]hile the court must make a separate finding under [25 United States Code] section 1912(d), the

---

prerequisite to the department fulfilling its statutory obligations.' " (*Melinda K., supra,* 116 Cal.App.4th at p. 1158.)

[10] Father asks us to direct the juvenile court to order an appropriate case plan developed and six months of services provided. "[B]ecause we lack information as to any court orders or factual developments that may have intervened since the entry of the [appealed-from] order . . . and cannot speculate as to their possible effect on the current situation of [Minors] and [their] family members, we leave it to the sound discretion of the trial court to determine what procedural steps, and what result, are appropriate at this juncture in light of our reversal, the grounds on which it was based, and the current state of affairs in [Minors'] family." (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 701; see also *In re K.C., supra,* 212 Cal.App.4th at p. 334 [reversing reasonable services finding and directing juvenile court to provide additional services "unless new circumstances prevailing upon remand support a finding that services are unwarranted"].)

11

standards in assessing whether "active efforts" were made to prevent the breakup of the Indian family, and whether reasonable services under state law were provided, are essentially undifferentiable.' " (*C.F. v. Superior Court* (2014) 230 Cal.App.4th 227, 238 (*C.F.*).) We review the juvenile court's finding for substantial evidence. (*Id.* at p. 239.)

The Department argues Father lacks standing to bring this challenge because he was living out of state and had no contact with Minors for the previous two years. The sole authority cited by the Department is *Adoptive Couple v. Baby Girl* (2013) __ U.S. __ [133 S.Ct. 2552], which held the "active efforts" requirement does not apply "when an Indian parent abandons an Indian child prior to birth and that child has never been in the Indian parent's legal or physical custody." (*Id.* at p. 2562.) We decline to extend this narrow holding to the circumstances presented here, where Father did not abandon Minors prior to their birth and lived with them for some years before leaving the state.

We also reject the Department's contention that Father forfeited this challenge by failing to object to the finding below. " ' "Generally, points not urged in the trial court cannot be raised on appeal. [Citation.] The contention that a judgment is not supported by substantial evidence, however, is an obvious exception to the rule." ' " (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1560 [substantial evidence challenge to adoptability finding not forfeited by failure to object below].)[11]

We have already found the Department failed to demonstrate reasonable services were provided to Father during the relevant period. Because the reasonable services and active efforts standards " 'are essentially undifferentiable' " (*C.F., supra,* 230 Cal.App.4th at p. 238), we conclude no substantial evidence supports the juvenile court's

---

[11] To the extent the Department argues forfeiture on the ground that Father failed to specifically identify the active efforts finding in his notice of appeal, we reject the contention. In a juvenile appeal, "[t]he notice of appeal must be liberally construed, and is sufficient if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rule 8.405(a)(3).) Father's notice of appeal identifies April 14, 2016, as the date on which the appealed-from orders were made. Although the notice also states he is appealing the "366.21(e) findings," we liberally construe the notice of appeal to encompass all related findings and orders from the April 14, 2016 hearing.

finding that active efforts were made on behalf of Father.[12]  The Department contends active efforts were not required because Father "was not part of the Indian family" having been out of contact with Minors for two years before the dependency petition was filed; we have rejected this argument already.  The Department's citation to cases finding no active efforts required are inapposite, involving parents for whom active efforts would be clearly futile.  (*Letitia V. v. Superior Court* (2000) 81 Cal.App.4th 1009, 1016 [active efforts not required "where substantial but unsuccessful efforts have just been made . . . in a juvenile dependency case involving one child, and the parent has shown no desire to change" in a dependency case involving a second child]; *In re K.B.* (2009) 173 Cal.App.4th 1275, 1284 [active efforts not required where father's "history clearly demonstrates the futility of offering reunification services: He is a registered sex offender with a prior conviction for lewd and lascivious acts on a child under the age of 14 . . . [and] the court sustained the allegations that he sexually molested [the minors' half-sister]"].)

## DISPOSITION

The portions of the juvenile court's disposition order finding reasonable services were provided to Father and active efforts were made to prevent the breakup of the Indian family are reversed, and the matter is remanded to the juvenile court for further proceedings consistent with this opinion.

---

[12] An ICWA expert testified at the disposition hearing that active efforts had been made to prevent the breakup of the Indian family.  While this constitutes substantial evidence of the efforts made up to disposition, it does not bear on the efforts made following disposition.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.

(A148171)

14

**CERTIFIED FOR PARTIAL PUBLICATION**<sup>*</sup>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re T.W., et al., Persons Coming Under the Juvenile Court Law. | |
| MENDOCINO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>S.W.,<br><br>        Defendant and Appellant. | A148171<br><br>(Mendocino County<br>Super. Ct. Nos. SCUK-JVSQ 15-17227, 15-17228, 15-17229)<br><br>**ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PARTIAL PUBLICATION**<br><br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on February 2, 2017, be modified as follows:

(1) On page 1, replace the first sentence of the second paragraph with the following: "In May 2015, the Mendocino County Department of Social Services (the Department) filed a Welfare and Institutions Code section 300¹ petition with respect to T.W.-1, T.W.-2, and T.W.-3 (collectively, Minors)."

(2) Replace all references to "Tal.W." with "T.W.-1."

---

<sup>*</sup> Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

1

(3) Replace all references to "Tas.W." with "T.W.-2."

(4) Replace all references to "Tar.W." with "T.W.-3."

The opinion in the above-entitled matter, filed on February 2, 2017, was not certified for publication in the Official Reports. For good cause it now appears that the opinion, with the exception of Part II, should be published in the Official Reports.

There is no change in the judgment.

Dated: _____        _____, Acting P. J.

2

Superior Court of Mendocino County, Nos. SCUK-JVSQ 15-17227, 15-17228, 15-17229, Hon. David Riemenschneider, Judge.

Mara L. Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Katharine L. Elliott, Mendocino County Counsel, Charlotte E. Scott, Deputy County Counsel, for Plaintiff and Respondent.