Filed 12/15/20  E.M. v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Juvenile court, rule 8.1115(a), prohibits juvenile courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| E.M.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>Respondent;<br>_____<br>SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>Real Party in Interest. | H048474<br>(Santa Clara County Super. Ct. Nos. 18JD025359, 18JD025360) |

E.M. is the mother of E.L., who is a dependent of the Santa Clara County Juvenile Court.  She has filed a petition for extraordinary writ and requested a stay of a Welfare and Institutions Code section 366.26[1] hearing pursuant to California Rules of Court, rule 8.452.[2]  Mother asserts the juvenile court erred when it terminated reunification services and set a permanency hearing, because she was not afforded reasonable reunification

---

[1] All further unspecified statutory references are to the Welfare and Institutions Code.

[2] Mother has a pending appeal in this court in case number H048482 challenging the juvenile court's order denying relative placement of E.L. with paternal grandparents. Appellate counsel filed a letter brief on December 7, 2020 pursuant to *In re Phoenix H* (2009) 47 Cal.4th 835, stating that she found no arguable issues on appeal.

services after the statewide stay-at-home order resulting from the COVID-19 pandemic went into effect in March 2020. For the reasons set forth below, we deny Mother's writ petition and her request for a stay.

## I. STATEMENT OF THE FACTS AND CASE

In May 2019, Mother and her infant, E.L., both tested positive for methamphetamine at the child's birth. The Santa Clara County Department of Family and Children's Services (Department) was notified and contacted Mother. E.L. was taken into protective custody and placed in a foster home.

The Department filed a petition pursuant to section 300, subdivisions (b)(1) and (j) on May 29, 2019, alleging that E.L. suffered serious harm as a result of Mother's failure to protect E.L., and her inability to provide regular care for E.L. due to mental illness or substance abuse. The petition also alleged that Mother was on probation until 2021 for a drug-related conviction and had not complied with conditions. Finally, the petition alleged that E.L.'s three half siblings had been abused or neglected due to Mother's drug use and chronic homelessness.

Mother had experienced severe trauma as both a child and an adult. She was a victim of childhood sexual abuse and human trafficking. She was a victim of serious domestic violence as an adult, suffering a broken arm at the hands of her partner. Mother had been diagnosed with anxiety and post-traumatic stress disorder.

The jurisdiction/disposition hearing was held on August 21, 2019. The juvenile court found the allegations in the Department's petition true, and that E.L. came within its jurisdiction under section 300, subdivisions (b) and (j). The juvenile court placed E.L. into protective custody, and ordered family reunification services for both parents.[3] Mother was ordered to complete a case plan that included parenting classes, random weekly drug testing, attendance at twelve-step meetings two times per week, substance

---

[3] E.L.'s father does not challenge the Juvenile Court's decision to terminate reunification services.

abuse treatment, and therapy to address mental health issues associated with her childhood trauma.  The juvenile court also ordered that Mother have at least two supervised visits with E.L. per week.

### A.  *November 19, 2019 Interim Review Hearing*

At the interim review hearing, the social worker reported that except for consistently visiting with E.L., Mother had not participated in her case plan.  She had not attended Parent Orientation or the Celebrating Families parenting classes, which had been scheduled on June 17 and June 24, 2019.  Mother had not submitted to any drug tests and admitted that she had recently used methamphetamine.  Mother said she was going to Narcotics Anonymous (NA) meetings two to three times a week, but had not given the social worker any meeting slips to prove that she had attended.  Mother reported that she had been going to therapy but had not given the social worker the therapist's contact information.

### B.  *February 11, 2020 Six-Month Review*

In the six-month review report, the Department recommended that services for Mother be terminated and that the court set a section 366.26 hearing.  Mother had not attended Parent Orientation, and had not attended Celebrating Families.  Mother was not submitting to drug tests.  Mother told the social worker that she went to three NA meetings but had not provided proof.  Mother was accepted into a residential drug treatment program on November 26, 2019, but left after one day.  Mother was attending therapy once every one to two weeks.  Mother did not keep scheduled appointments and instead, she dropped in to her therapist's office randomly.  Mother had attended all of her visits with E.L. and, according to the visitation supervisor, had behaved appropriately.

Mother did not agree that services should be terminated, and requested a contested hearing, which was set for April 13 and 15, 2020.

Due to the COVID-19 global pandemic, on March 4, 2020, Governor Gavin Newsom declared that California was in a state of emergency[4] and issued a subsequent stay-at-home order on March 19, 2020.[5] The Judicial Council of California issued Emergency Rule 6(c)(6) on April 6, 2020, authorizing continuances for juvenile dependency hearings due to the pandemic.[6]

The contested hearing was first continued to May 29, 2020, and then to July 8, 2020. Due to the passage of time, the matter was set for a twelve-month review shortly thereafter on July 17, 2020.

The juvenile court set the matter for a combined six/twelve-month contested hearing on August 24 and 25, 2020.

### C. May 29, 2020 Addendum Report

In preparation for the May 29, 2020 contested hearing, the Department prepared an addendum report and changed its recommendation, asking instead that Mother receive reunification services for an additional six months.

In the addendum report, the social worker explained why the Department had changed its recommendation to continue reunification services: "Services have been limited during the shelter-in-place order and classes/services have only been recently resuming through online sessions. The mother has stated that she has had phone problems and connection issues and that she has not be[en] able to attend visits regularly

---

[4] Executive Department State of California Proclamation of a State of Emergency <https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf> [as of December 14, 2020], archived at <https://perma.cc/3JXD-XZKN>.

[5] Executive Department State of California Executive Order N-33-20 <https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf> [as of December 14, 2020], archived at <https://perma.cc/XS9R-Q9SM>.

[6] Judicial Council of California Amendments to the California Rules of Court <https://www.courts.ca.gov/documents/2020-04-06-rules-effective-04-06-2020.pdf> [as of December 14, 2020], archived at <https://perma.cc/7BVR-52NE>.

because of these problems. Although the parents have made no progress in their case plan, and more importantly, do not appear to have made any behavioral changes to alleviate the concerns that brought the family to the Court's attention, the unprecedented Shelter in Place/COVID 19 has resulted in an impact to the parents' reunification services. Therefore, it is respectfully recommended that, the parents be granted an additional six months of Reunification Services."

The Department scheduled video visits between Mother and E.L. for three times per week beginning at the end of March.[7] Mother attended video visits sporadically, telling the social worker at times that her phone charger was not working, her phone had died, and that she was unable to connect to calls. The Department was unable to reach Mother from March 20 through March 31, 2020 because Mother had changed her contact information without informing her social worker. In-person visits began again on May 6, 2020. E.L. developed a fever around May 14, 2020, which required in-person visits to stop temporarily while the child was in a two-week quarantine. Mother was able to start in-person visits again on June 3, 2020.

Mother attended therapy two times between January and March 2020. The therapist called Mother to check-in in March 2020, and Mother told the therapist that she was not good at talking on the phone, after which, Mother no longer responded to the therapist's calls or text messages.

### D. July 17, 2020 Twelve-Month Review Report

In the twelve-month review report, the Department recommended that reunification services be terminated. The report stated that the social worker made efforts to help Mother with her case plan by scheduling video visits and updated referrals to

---

[7] The Department filed a request for judicial notice of the juvenile court's temporary emergency orders modifying visitation to a video format in light of the COVID-19 pandemic. The orders were made on March 19, April 13, April 30, May 29 and July 15, 2020. The request for judicial notice is granted.

online parenting classes. The social worker also reached out to Mother frequently by phone and text; however, Mother did not respond to the social worker's attempts to contact her. The social worker was unable to leave Mother voicemail messages because her mailbox was often full. Mother also did not respond to the social worker's text messages. When the social worker was able to reach Mother, she asked Mother if she needed anything to help her with her services, and Mother did not respond. In July 2020, the social worker asked Mother if she had problems with her internet. Mother told the social worker to contact to her attorney because she did not feel comfortable speaking to the social worker.

Mother failed to participate in her case plan. She did not attend the online Celebrating Families class in mid-July. After drug testing resumed in June 2020, Mother did not submit to any tests. Mother had not provided the social worker with proof of attendance at any twelve-step meetings.

Mother texted the social worker at times to express her wishes and concerns but did not request further assistance with accessing reunification services. After a visit with E.L. in June 2020, Mother complained to her social worker that the visitation supervisor was dressed provocatively to expose herself to Father. Mother also called the social worker to complain about the foster mother's care of E.L.

Mother's probation officer for her drug case told the social worker he was requesting a violation of probation because Mother had not responded to him since January 2020.

### E. August 24, 2020 combined Six/Twelve-Month Contested Hearing

On August 24, 2020, the juvenile court held a combined six/twelve-month contested hearing. The Department recommended that reunification services be terminated and requested that the court set a section 366.26 hearing. Mother argued that the Department had not provided her with reasonable reunification services.

6

The sole witness at the hearing was the assigned social worker, Kathy Dinh. Dinh testified that Mother had made minimal progress with her case plan. She stated that Mother did not attend the online Celebrating Families class that began in July 2020. Mother had not submitted to any drug tests or shown proof of attendance at any twelve-step meetings.

Regarding communication with Mother, Dinh stated that Mother reached out to advocate for her own interests when she wanted to but did not respond to Dinh's calls or text messages about her case plan. Mother contacted Dinh to complain about the attire of the visitation supervisor and E.L.'s care from foster mother; however, Mother did not answer the phone when Dinh called, nor did she respond to Dinh's text messages. Dinh testified that Mother's phone number changed three times throughout the reunification period. Dinh was unable to reach Mother for about two weeks each time the number changed.

Dinh testified that Mother was consistent with in-person visits prior to the stay-at-home order in March 2020. In-person visitation was suspended for seven weeks from March 17 to May 6, 2020, during which Mother was offered video visits. Mother was not as consistent with these visits, telling the social worker that she was having difficulty with her phone. Dinh stated that in April 2020, Mother said she could not connect for her video visit with E.L. through Zoom. Dinh changed the visit platform from Zoom to Skype, which worked for Mother. During a May 2020 visit, Mother complained to the visitation supervisor about her phone. Dinh testified that she did not know of any other problems Mother was having with her phone for visits or using it for access to the internet. Dinh did not tell Mother about the free phone program available to low-income Santa Clara County residents.

Mother did not inform Dinh that she could not access services remotely. In July 2020, Mother mentioned internet access to Dinh. In response, Dinh asked her what problems she was having accessing the internet. Mother responded that she was not

7

comfortable talking to Dinh and that Dinh should contact Mother's attorney. Mother then hung up the phone. After that conversation, Dinh e-mailed Mother information about low-cost internet services.

Dinh testified that Mother did not continue attending therapy once sessions became virtual. Mother's therapist was able to continue therapy via telephone or video, but Mother did not respond when he attempted to reach her. Mother's therapist eventually closed the case due to lack of contact. As a result, Dinh provided Mother referrals for new therapists. Mother did not obtain a new therapist.

In conclusion, Dinh opined that COVID-19 did not disrupt Mother's services because she was not participating in services before the pandemic.

Mother did not testify at the contested hearing.

### F. *September 3, 2020 Juvenile Court Order*

Following the contested six/twelve-month hearing, the juvenile court terminated reunification services and set a section 366.26 selection and implementation hearing for December 17, 2020. The juvenile court found that there would be a substantial risk of harm if E.L. were to be returned to either parent, because neither Mother nor Father had made substantial progress in addressing the substance abuse issues that led E.L. to be removed from their care.

The juvenile court also found that reasonable reunification services were provided to both parents. The juvenile court stated that Mother was offered services to address drug abuse, but Mother did not submit to drug testing at any time during the reunification period, nor did she participate in drug treatment. The juvenile court noted that Mother was given the opportunity to attend remote therapy when the stay-at-home order was in place, but she chose not to participate or attend remote sessions.

Regarding phone issues and internet access, the juvenile court found that Mother's lack of participation in services was not due to technology issues; rather, Mother failed to participle by choice. Mother was able to use her phone to attend video visits with E.L.

8

and to contact the social worker when she wanted to. The social worker attempted to address any internet issues Mother might be having, but Mother would not tell the social worker what the issues were. The juvenile court concluded that Mother did not take advantage of the help the Department offered her.

On November 13, 2020, Mother filed a petition for extraordinary writ and a request to stay the section 366.26 hearing scheduled for December 17, 2020.

## II. DISCUSSION

Mother argues that the juvenile court should have continued the case rather than set the section 366.26 hearing, because she was not provided reasonable reunification services. Mother asserts services were inadequate because the Department did not ensure she had sufficient internet and phone access to participate in her services, which were only available online due to the COVID-19 pandemic.

### A. *Standard of Review*

On appeal, we consider the sufficiency of the evidence to support the juvenile court's order. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688.) " 'In reviewing the reasonableness of the services provided, this juvenile court must view the evidence in a light most favorable to the [Department]. We must indulge in all legitimate and reasonable inferences to uphold the [juvenile court's findings]. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed.' " (*In re Monica C.* (1995) 31 Cal.App.4th 296, 306.) "We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.)

### B. *Reunification Services*

In a case involving the removal of children under the age of three from their parents' custody, section 366.21, subdivision (e)(3) authorizes the juvenile court to set a

permanency hearing if it finds by clear and convincing evidence that the parents failed to participate regularly and make substantive progress in a juvenile court-ordered treatment plan. (§ 366.21, subd. (e)(3).) "Reasonable" reunification services are dependent on the needs of the family, but generally, services are adequate if: (1) the case plan identifies the problems leading to the loss of custody; (2) the offered services are designed to remedy those problems; and (3) the agency maintains reasonable contact with the parent and makes reasonable efforts to assist that parent in areas in which compliance proves difficult. (*In re Riva M*. (1991) 235 Cal.App.3d 403, 414.) The reasonableness and adequacy of a department's reunification services are determined by the circumstance of each case. (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547 (*Misako R.*).) We consider the case plan offered to Mother under this standard.

### C. Services Before the COVID-19 Pandemic

Beginning in May 2019, when E.L. was placed in protective custody prior to the COVID-19 pandemic, the Department made diligent efforts to provide Mother with many services to address her substance abuse, including drug testing and treatment, as well as information about support groups and access to a residential drug treatment program. Mother did not avail herself of the services offered. The Department gave Mother information about how to participate in drug testing, however, Mother did not submit to any weekly drug tests during the entire reunification period. Although Mother called the drug testing line five times following the interim review hearing in November 2019, to see if she was required to test, she never submitted to any tests. The Department also provided Mother with a list of twelve-step meetings. Mother told the social worker in October 2019 that she was attending the meetings twice a week; however, as of late January 2020, Mother had not provided any meeting slips as proof of attendance. The

10

Department referred Mother to a residential treatment program after conducting a drug abuse assessment. Mother entered the residential program in November 2019 but left after one day.

In addition to the services to help Mother with her substance abuse, the Department offered Mother opportunities to help her improve her parenting skills and address her mental health issues, including parenting classes, and individual therapy. Mother did not attend the Celebrating Families parenting class in July 2019, October 2019, or January 2020. Mother was participating in therapy sporadically. In October 2019, Mother told her social worker that she had not seen her therapist for the past three weeks. Mother's therapist told the social worker that Mother was making some progress, but she did not attend her scheduled appointments and would drop in unannounced every one or two weeks. During the period between January and March 2020, Mother attended therapy two times. Following March 2020, Mother did not respond to her therapist's attempt to contact her, and her case was closed for lack of participation.

Mother was most successful in her reunification plan by regularly attending her twice-weekly in-person visits with E.L., and behaving appropriately during the visits.

### D. Service During the COVID-19 Pandemic

Due in large part to the limited availability of services in the early part of the statewide stay-at-home order, the Department changed its recommendation in late May 2020 and asked that reunification services be continued. Mother argues the Department failed to provide reasonable services following the stay-at-home order because the Department did not ensure that she had adequate internet access, did not provide adequate therapy sessions, and did not provide adequate visitation with E.L.

#### 1. Internet Access

Mother argues that once remote services began, the Department did not ensure that she had access to the internet to participate in the services. She asserts the Department should have informed her of the availability of county resources for internet access such

11

as a technology room reserved for internet use at the Department, and the possibility of receiving a free phone from the county.  Citing similarities between cases where parents are located outside the county and not offered local services, Mother asserts it was unreasonable to refer her to internet-based remote services and make no effort to ensure that she had access to adequate internet.  (See *In re Taylor J.* (2014) 223 Cal.App.4th1446; *In re T.W.* (2017) 9 Cal.App.5th 339 [unreasonable for department not to provide an out-of-county parent with services where the parent is located].)

Mother's argument that the Department failed to ensure that she had adequate internet access to participate in her services is refuted by the record.  Despite the social worker's attempts to contact her, Mother was often nonresponsive, failing to answer the phone or respond to text messages.  Mother did not answer the social worker's specific question of whether she needed anything.  In July 2020, Mother mentioned the internet to the social worker, and when the social worker asked Mother what issues she was having, Mother told the social worker she did not feel comfortable talking to her, referred her to Mother's attorney, and hung up the phone.  Following this conversation, the social worker sent mother information about low-cost internet access.

It is notable that although Mother did not respond to the social worker's attempts to discuss the case plan with her, she was able to contact the social worker when she wished.  For example, Mother contacted the social worker when she was concerned about the foster mother's care of E.L. and when she was unhappy with the clothing the visitation supervisor wore to visits.  In addition, Mother was receiving calls and text messages, since she would respond to the social worker's efforts to contact her about visits with E.L.

The record is clear that Mother was able to successfully communicate her concerns to the social worker when those concerns were important to her.  The record is also clear that when the social worker inquired about Mother's internet access, Mother refused to answer and hung up the phone.  Parents cannot sit by and fail to notify the

department of a potential inadequacy in the reunification plan, and later complain that the services offered to them were inadequate. (*N.M. v. Superior Court* (2016) 5 Cal.App.5th 796, 808 (*N.M.*) [mother's argument that she was not provided reasonable mental health services was refuted by her delay in raising the issue until the eighteen-month hearing].)

### 2. *Therapy*

Mother argues that after March 2020, the Department did not provide adequate services to address her mental health needs because it did not find her a therapist who would meet with her in-person during the pandemic.

Because of her severe trauma history, including being a victim of childhood sexual abuse, human trafficking, and serious domestic violence as an adult, as well her diagnosis of anxiety and post-traumatic stress disorder, Mother argues that treatment of her mental health required in-person therapy. Mother argues it was not reasonable to expect her to participate in remote therapy sessions.

While it is arguable that in-person therapy is preferable to remote meetings, there is no evidence in the record that in-person therapy was available during the stay-at-home order. Although Mother told her therapist that she did not feel comfortable talking on the phone, she did not tell him or the social worker that she would only attend therapy if it was in-person. Instead, she ignored her therapist when he attempted to reach out to her many times following the stay-at-home order in March 2020. As is the case with internet access, Mother had the opportunity to inform the social worker that she wished to attend in-person rather than remote therapy, but she failed to do so. (See, *N.M.*, *supra*, 5 Cal.App.5th at p. 808.)

### 3. *Video Visitation*

Mother argues that she was not provided reasonable services because her visitation with E.L. was limited during the pandemic. Citing *In re Julie M.* (1999) 69 Cal.App.4th 41, 49, Mother argues: "[a]n obvious prerequisite to family reunification is regular visits between the noncustodial parent or parents and the dependent children 'as frequent[ly] as

possible, consistent with the well-being of the minor.' " Mother asserts services are unreasonable when visitation is limited without evidence that the parent is jeopardizing the child's safety, because the chance of reunification is significantly reduced. (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1427.)

Here, prior to the stay-at-home order in March 2020, Mother had in-person visits with E.L. two times a week. Because of the pandemic, Mother did not have in-person visits for nine weeks. In-person visits were first suspended from March 17 to May 6, 2020. The second time in-person visits were suspended was from May 18 to June 3, 2020, because E.L. developed a fever and was required to quarantine for 14 days.

When the stay-at-home orders went into effect in March 2020, the Department acted immediately to transition visits to a video format. Mother's visitation was increased to three times a week. The Department made diligent efforts to ensure that Mother was able to participate in the video visits, at one point changing the visit platform from Zoom to Skype, and so that Mother could successfully connect. Mother only participated in the video visits sporadically.

Without question, video visits are not the ideal tool to maintain or promote a bond between an infant and parent. However, under the circumstances of this case where Mother had nearly a year of in-person visits and nine weeks of video visits when they were absolutely necessary, the visitation offered by the Department was reasonable if not optimal. (See *Misako R.*, *supra*, 2 Cal.App.4th at p. 547 [the standard is whether services were reasonable under the circumstances].)

### E. Conclusion

After reviewing the entire record, we find there is substantial evidence to support the juvenile court's conclusion that reasonable reunification services were provided to Mother both before and during the COVID-19 pandemic. The Department identified substance abuse as the reason Mother lost custody of her children and offered Mother

14

services that were designed to remedy her substance abuse problems, including access to residential drug treatment and therapy to address her mental health.

The COVID-19 pandemic created serious challenges in providing reunification services for Mother; however, it is clear the Department made diligent efforts to find remote options. During the stay-at-home order, Mother was offered modified services including referrals to online parenting classes and twelve-step meetings, drug testing, virtual therapy sessions and an increased video visits. Although less than ideal, the services in this case were reasonable under the circumstance of the COVID-19 pandemic. (See *Misako R.*, *supra*, 2 Cal.App.4th at p. 547.)

To be clear, our conclusion that the remote services were reasonable is specific to and dependent on the facts of this case; we do not mean to say that remote services are reasonable in all juvenile dependency proceedings. We are particularly mindful of the limitations of video visitation between an infant and mother. But here, it is clear that Mother's failure to participate in services during the pandemic was due to her own unwillingness to participate, rather than a lack of access to a phone or the internet.

We find the juvenile court did not err when it concluded that the Department provided Mother with reasonable services, terminated those services and set the section 366.26 hearing.

### III. DISPOSITION

The petition for extraordinary writ is denied. The request for a temporary stay of the section 366.26 hearing is also denied. Our decision is immediately final as to this court. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2).)

_____
Greenwood, P.J.

WE CONCUR:


_____
Grover, J.


_____
 Danner, J.


E.M. v. Superior Court
No. H048474