Filed 10/13/21  In re S.H. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.H. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SAMUEL H., <br><br> Defendant and Appellant. | F082676 <br><br> (Super. Ct. Nos. 20CEJ300150-1, 20CEJ300150-2, 20CEJ300150-3) <br><br> **OPINION** |

-ooOoo-

## THE COURT*

APPEAL from an order of the Superior Court of Fresno County.  Gary L. Green, Commissioner.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P. J., Smith, J. and Meehan, J.

Samuel H. (father) appeals from the juvenile court's finding at a six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e)(1))[1] in March 2021 that the Fresno County Department of Social Services (department) provided him reasonable services to reunify with his three children who range in age from eight to four years of age. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

The children were removed from the custody of their mother Kristy H. (mother) in May 2020 by law enforcement because of the filthy condition of her home and suspected drug activity. Mother's girlfriend was using and selling methamphetamine from the home. Trash, dirty diapers and clothes littered the floor, the kitchen sink was filled with dirty dishes and flies were everywhere. The children did not have clean clothes to wear, and the food supply was minimal. The children were initially placed together in foster care and then in the home of their maternal great-grandmother. Father was living in Lovell, Wyoming.

According to Fresno County records, the parents were divorced in March 2019 and mother was granted sole legal and physical custody of the children. Father was not ordered visitation and, according to mother, had not had contact with them since September 2017. A five-year protective order was issued on February 28, 2018, protecting mother.

Mother was on felony probation for assault with a deadly weapon and a misdemeanor conviction for driving under the influence. She was court ordered to attend drug and alcohol treatment and submit to drug testing. She had been unable to attend services because of COVID-19 and was struggling financially.

Father had a criminal history dating back to 2009, including charges for possession of a controlled substance, inflicting corporal injury on a spouse and violation

---

[1] Statutory references are to the Welfare and Institutions Code.

of a domestic violence protective order. He violated probation in May 2019 by moving to Wyoming and had a warrant for his arrest in Fresno County. In June 2020, he was convicted in Wyoming of driving while under the influence.

The juvenile court ordered the children detained and set a combined hearing on jurisdiction and disposition (combined hearing) for June 23, 2020. The court ordered services for mother pending its disposition of the case.

Father requested placement of the children and was willing to participate in reunification services. He was employed full time, lived in his own home, and had the support of his girlfriend. On September 8 and 11, 2020, a social worker supervised a video chat visit and a telephone visit between father and the children. During the video chat visit, the children smiled, laughed, and stated they loved their father. They wanted to visit and talk to him but did not want to live with him because they saw him fighting with their mother.

Father appeared at the combined hearing via video and was appointed counsel. The matter was continued and then set as a contested hearing for September 29, 2020.

The juvenile court sustained the allegations and found it would be detrimental to place the children with father. The court removed them from parental custody and ordered the parents to participate in parenting classes, substance abuse, mental health and domestic violence evaluations and any recommended treatment and random drug testing. The court ordered weekly in-person supervised visitation for mother and weekly telephonic visitation for father. The six-month review hearing was set for March 23, 2021.

In its report for the six-month review hearing, the department advised the juvenile court the parents made moderate progress in meeting their service plan requirements and recommended the court continue reunification services to the 12-month review hearing. Mother completed a parenting class and her assessments. She was referred to a 52-week domestic violence program and was enrolled. She did not require mental health treatment

3.

but was referred for outpatient substance abuse treatment. She entered treatment but was discharged because she tested positive for methamphetamine. She participated in another substance abuse assessment and was again referred to an outpatient treatment program in early February 2021.

The department attempted to arrange services for father near his home in Lovell, Wyoming but was unsuccessful. On October 1, 2020, just days after the dispositional hearing, Fresno County social worker Rosa Eufracio contacted social worker Janet Prosser from Lovell, Wyoming to inquire about services in father's area. Prosser identified Big Horn Basin Counseling Services (Big Horn) as a service provider but stated father would have to call Big Horn himself and arrange to have Fresno County billed for services. Instead, father contacted Lovell County and was told the Fresno County social worker had to send the court's order for services. Father relayed that information to Eufracio on October 15. On October 19, father was placed on a waiting list for a virtual parenting class scheduled to begin on January 8, 2021. On October 21, Prosser asked Eufracio to fax the minute order and informed her the department had to pay for services up front. Eufracio faxed the minute order. On October 22, Fresno County assigned father's case to social worker Amanda Ford. On October 27, Prosser told Ford that she could only provide father resources because the children were residing in another state. Prosser also led father to believe he could not receive services in Lovell unless Fresno County initiated an Interstate Compact on the Placement of Children (ICPC). Ford explained to him that an ICPC was necessary to place children out of state, not for services. Ford spoke to father on November 6. He was frustrated because he was paying for services out of pocket. On November 17, Ford sent father a text stating she contacted Big Horn, advising them of the services he was court ordered to complete. Big Horn stated that father had to contact them to arrange services. On December 28, Amber, a staff member at Big Horn, informed Ford they could provide father all the court-ordered services except a domestic violence assessment but could not conduct any of the

4.

assessments without prepayment. Amber said she would fax a form "I9" and invoice and gave Ford the cost of the substance abuse and mental health assessments.[2] Over the next two months, Ford faxed form "590" for Big Horn to complete only to discover Big Horn needed to complete a form "587," which Ford faxed. On March 12, 2021, the department received approval for father to have a domestic violence assessment via telephone with the Marjaree Mason Center in Fresno.

By the time of the six-month review hearing, father was participating in parenting classes, had been referred to Marjaree Mason Center for a domestic violence assessment and was consistently visiting the children by telephone with supervision. The department was still awaiting a completed form from Big Horn.

Father's attorney submitted the matter on the department's report at the six-month review hearing on March 23, 2021, but argued father had not been provided reasonable reunification services, citing the department's failure to arrange services in father's county of residence and delay in referring him for a domestic violence assessment in Fresno County. In addition, his home had not been assessed and in-person visitation had not been arranged. Father's attorney requested the department make arrangements, including payment for transportation, for father to have in-person visits in Fresno County.

The juvenile court stated it was also concerned about the lack of progress with arranging services for father but recognized there were obstacles such as the rural area in which father lived in Wyoming. County counsel informed the court that Lovell County was not being cooperative as well and that father was not seeking visits in Fresno County because he had an arrest warrant. Father's attorney argued services were not reasonable because the department did not arrange virtual services through Fresno County but acknowledged that arranging services for him in his local area would be easier.

---

[2]     The "I9" and other forms subsequently mentioned are identified in the record only by their form number without any explanation of the forms' use.

The juvenile court found the department provided father reasonable reunification services, stating:

> "I can understand your frustration, but I think that the Department is obligated to try to promote and arrange local services. And I think the Department has tried to do that. There has been some missteps and mishaps. I don't know that all the blame [lies] with the local … Department. I think there could be some problems with Wyoming. I'm not trying to besmirch Wyoming, but my guess is that this is a rural area. They may not be equipped or … accustomed to these sorts of things. I don't think that anything that the Department has done … is unreasonable. Unfortunately, it resulted in delay. But we are not here in a situation where we are terminating services. It's just that the preferred … services [haven't materialized]. And I, quite frankly, would expect that if the Department had tried to push remote Fresno-based services that I would get an argument from you the other way, that it should have been local services."

The juvenile court further found the parents' progress in alleviating the causes necessitating removal was moderate and that it would be detrimental to return the children to parental custody. The court set the 12-month review hearing (§ 366.21, subd. (f)(1)) for July 13, 2021.

## DISCUSSION

### A. *Reasonableness of Services Generally*

When a child is removed from parental custody, the juvenile court ordinarily orders reunification services for the parents. (§ 361.5, subd. (a).) The purpose of reunification services is to remedy the problems that led to the child's removal. (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362.)

"At each review hearing, if the child is not returned to his or her parent, the juvenile court is required to determine whether 'reasonable services that were designed to aid the parent … in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent … ' [citations]." (*In re M.F.* (2019) 32 Cal.App.5th 1, 13–14.) Services are considered reasonable if the child welfare agency has " 'identified the problems leading to the loss of

custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents .…' " (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972 (*Alvin R.*).)

"In almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) The remedy for failing to offer or provide reasonable services is to extend the reunification period and continue services. (*Alvin R.*, *supra*, 108 Cal.App.4th at p. 975.)

B. *Standard of Review*

"When a finding that reunification services were adequate is challenged on appeal, we review it for substantial evidence. [Citation.] ' "In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact." ' [Citation.] Even if there is no substantial conflict in the evidence, we must nevertheless draw all legitimate inferences in support of the findings of the juvenile court." (*Alvin R.*, *supra*, 108 Cal.App.4th at p. 971.)

"A finding that reasonable reunification services have been provided must be made upon clear and convincing evidence. [Citation.] 'When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing evidence, the reviewing court must determine if there is any substantial evidence—that is, evidence which is reasonable, credible and of solid value—to support the conclusion of the trier of fact. [Citations.]' " (*Alvin R.*, *supra*, 108 Cal.App.4th at p. 971.)

"When applying the substantial evidence test, however, we bear in mind the heightened burden of proof. [Citation.] 'Under this burden of proof, "evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind." [Citation.]' " (*Alvin R.*, *supra*, 108 Cal.App.4th at p. 971.)

C.      *Analysis*

Father contends the department unreasonably delayed in attempting to provide him services through local providers. He further contends it was not reasonable for the department not to provide him in-person visits. We disagree.

According to the record, the department wasted no time in trying to arrange services for father. Within days of the dispositional hearing on September 29, 2020, Eufracio conferred with Prosser from Lovell County and Big Horn was identified as a service provider. However, only father could communicate with Big Horn and Lovell County required a court order and prepayment to begin services. At the same time, however, Lovell County was telling Ford they could not provide father services because the children lived in another state and father that Fresno County needed to initiate an ICPC. Finally, in December 2020, Ford communicated directly with Amber from Big Horn and identified the services father needed. It was then that Amber informed Ford that Lovell County did not offer a domestic violence program. On March 12, 2021, Ford received approval to have a domestic violence assessment by telephone with the Marjaree Mason Center in Fresno. From December 28, 2020, to February 22, 2021, there was confusion as to what form Big Horn had to complete apparently for payment. Ford faxed the proper form on February 22, 2021, and was waiting for a response from Big Horn when she authored the report for the six-month review hearing.

As the record makes clear, the department was *not* dilatory in attempting to arrange services for father in his county of residence; it just was not successful. The department quickly identified Big Horn as the services provider. Subsequently, however,

8.

a number of obstacles beyond the department's control—i.e., consent to discuss the case, confusion about whether father could receive services, prepayment, and the proper form—caused a delay in initiating services for father. Further, once Ford learned that Big Horn did not offer a domestic violence program, she arranged for father to complete an evaluation by telephone.

Notably, father does not fault the department for focusing its efforts on services local to him rather than trying to arrange virtual services in Fresno County. Nor does he explain what more the department could have done under the circumstances to expedite the process through Lovell County. Instead, he contends significant delay under any circumstances is unreasonable and such a delay occurred here. The cases he cites for that proposition, *T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229 (*T.J.*) and *In re T.W.-1* (2017) 9 Cal.App.5th 339 (*T.W.-1*), are distinguishable.

*T.J.* was a neglect case involving an intellectually disabled single mother. (*T.J.*, *supra*, 21 Cal.App.5th at p. 1232.) There were significant delays that prevented her from accessing vital services. One of the referrals was to a regional center for developmentally disabled individuals, but it was "so backed up that it [could] not help a parent within a reasonable time." (*Id*. at p. 1243.) The agency placed her on a six- to 12-month waiting list for individual therapy, and then waited another four more months before making an alternate appropriate referral. (*Id*. at p. 1244.) As a result, the mother had not been provided any "actual services" except visitation and referrals to services by the six-month review hearing. (*Id*. at p. 1242.) The court observed that "the Agency put [the m]other in a holding pattern that resulted in a wait of nearly 11 months after her children were removed from her physical custody before she was provided with an individual therapist." (*Id*. at p. 1248.) As such, the court concluded, "A halfhearted effort on the Agency's part—which leaves the parent without services for months on end—does not amount to the provision of reasonable services." (*Id*. at p. 1251.)

9.

Here, the department was actively working to secure services through Big Horn and through Fresno County for those services not offered by Big Horn. It did not merely secure father's name on a waiting list as occurred in *T.J.* and then allow nearly a year to pass before seeking an alternative service provider.

*T.W.-1* is even more inapposite. The appellate court in that case found the social services department failed to provide the father, who was located out of state, reasonable services for numerous reasons. The initial case plan "failed to identify any service providers and instead placed the burden on [the f]ather to locate services." (*T.W.-1*, *supra*, 9 Cal.App.5th at p. 346.) The modified case plan identified one program but provided no contact information or instructions for enrollment. Father eventually received information for specific service providers three months after disposition. Furthermore, the case plan took more than half of the review period to develop and failed to address all of the problems leading to the minors' removal from the father's custody. For the services that were included in the case plan, the department did not provide adequate information to determine whether they were responsive to the objectives of learning parenting skills and avoiding criminal activity. (*T.W.-1*, *supra*, 9 Cal.App.5th at pp. 346–347.)

Here, the department was diligent in formulating father's case plan and it was specifically tailored to his needs. Further, father was not left to locate service providers. The social workers identified Big Horn, who provided most of the services father needed, and arranged for the remaining services (parenting and domestic violence) to be delivered virtually.

Finally, as stated above, the remedy for providing services that are not reasonable is to continue them. Here, the juvenile court ordered the department to continue providing services to father to the 12-month review hearing. Thus, even assuming the juvenile court erred in finding father was provided reasonable services, father received an additional six months of services and therefore suffered no prejudice.

As to visitation, father contends anything less than in-person visitation was a bar to reunification. Thus, the department's failure to arrange visitation in California was unreasonable. We disagree.

Visitation, as frequent as possible, is a critical component of reunification. (§ 362.1, subd. (a)(1)(A); *T.W.-1*, *supra*, 9 Cal.App.5th at p. 347; *T.G.*, *supra*, 188 Cal.App.4th at pp. 696–697.) The court may, however, limit a parent's contact with a child if imposing such a limitation serves the child's best interest. (*In re Cheryl H.* (1984) 153 Cal.App.3rd 1098, 1133.) Because the juvenile court is given wide discretion in making visitation orders in the child's best interest, we apply the abuse of discretion standard in reviewing such orders. (*In re Sofia M.* (2018) 24 Cal.App.5th 1038, 1044.) In reviewing a court's exercise of discretion, we do not reverse the order unless the court made an arbitrary, capricious, or patently absurd determination. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) The appellant has the burden on appeal to show the court abused its discretion. (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423.)

Here, there were two significant impediments to arranging in-person visitation for father in California; he had a warrant out for his arrest and his custody order precluded visitation. The juvenile court was concerned that father was in violation of his probation and that he potentially may have violated the custody order by having telephone contact with the children. In any event, the court ordered supervised telephonic visitation for him at the same frequency as the in-person visitation it ordered for mother. The court's decision to limit father's visitation to telephonic rather than in-person was appropriate under the circumstances and father does not persuade us otherwise.

We find no error.

## DISPOSITION

The order is affirmed.

11.