Filed 9/15/22  In re A.F. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re A.F., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN and FAMILY SERVICES BUREAU,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>C.F. et al.<br><br>        Defendants and Appellants. | A164101<br><br>(Contra Costa County Sup. Ct. No. J19-00835) |

C.F. (mother) and S.S. (father) appeal the juvenile court's order terminating their parental rights for their ten-year-old daughter, A.F.  They argue mother's counsel rendered ineffective assistance by failing to object to the alleged lack of reasonable reunification services, i.e., substance abuse treatment.  They further contend the court abused its discretion by denying mother's request for a bonding study and father's request to continue the permanency hearing to complete a paternity test.  We disagree.  We do, however, agree with their final contention — they argue the Contra Costa County Children and Family Services Bureau (Bureau) failed to comply with

1

its initial inquiry obligations under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA).  We conditionally reverse the order terminating parental rights and remand the matter for compliance with ICWA.

## BACKGROUND

In July 2020, the juvenile court sustained the Bureau's allegations that A.F. came within Welfare and Institutions Code[1] section 300 due to mother's ongoing substance abuse — in September 2019, mother was found unconscious in her car due to an opioid overdose, and the court detained A.F. at that time.  (§ 300, subd. (b)(1) [substantial risk of serious physical harm or illness resulting from parent's failure or inability to supervise or protect the child].)  Mother had a history of substance abuse issues.  In 2013, mother and father were charged with child neglect after police found trafficking amounts of oxycodone in their hotel room.  Mother was again arrested in 2014 for smoking marijuana in A.F.'s presence while she was two years old.  At that time, mother refused to comply with drug testing or participate in services.  She was also arrested for possessing heroin while driving with A.F.

On the Bureau's current petition, the court declared A.F. a dependent and continued her detention in a foster home.  The Bureau provided mother with a list of service referrals, including one for substance abuse treatment.  Mother reported not having American Indian heritage, and the court thus found there was presently no reason to believe A.F. is an American Indian child.

After a December 2020 disposition hearing, the juvenile court removed A.F. from mother's care and ordered reunification services, including a psychological evaluation, individual counseling, parenting classes, and

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

random drug and alcohol testing with substance abuse treatment if mother tested positive or missed a test. One of mother's case plan goals was to understand the factors contributing to the juvenile dependency, i.e., substance abuse. The court also ordered supervised visitation with A.F. twice each week, for two hours. The court determined father was A.F.'s alleged natural father, but it did not provide reunification services to him. Although father noted his desire to be a part of A.F.'s life, he failed to return the social worker's phone calls, and the Bureau was thus unable perform a social assessment.

By May 2021, the Bureau recommended terminating mother's reunification services and setting a hearing to determine a permanent placement for A.F. (§ 366.26.) The Bureau reported supervised visitation was going well, and A.F. loved spending time with mother. But that month, mother drove her car into a concrete wall, and she was ultimately charged with felony driving under the influence of alcohol and drugs. Overall, according to the Bureau, mother was "unable to demonstrate that she understands how her behavioral actions, such as, drug abuse, denial and accountability, ha[ve] contributed" to the dependency. She consistently denied any substance abuse, insisting her problems were related to seizures despite testing positive for opiates, morphine, and methamphetamine on several occasions between 2019 and 2021. She otherwise failed to comply with her substance abuse testing requirements on a regular basis. Mother's therapist closed her case due to her noncompliance with therapy — missing appointments and resisting treatment based on her belief she had no issues.

After the six-month review hearing in July 2021— more than 18 months after A.F. was detained — the juvenile court found there was no substantial probability A.F. would be returned to mother, and it terminated

3

family reunification services and set a permanency hearing. The court found the Bureau provided reasonable services and made every effort to ensure mother's compliance with those services. But mother consistently denied any substance abuse, resisted the Bureau's efforts, and refused to address her problems. Continuing services, the court concluded, would be contrary to A.F.'s interests. The court ordered two visits each month for two hours.

In September 2021, the Bureau filed a modification petition to reduce mother's visits with A.F. to once each month and to terminate telephone contact. (§ 388.) A few months prior, the juvenile court issued a restraining order protecting A.F. and her foster parents from A.F.'s maternal grandfather, who had left threatening messages on the foster parents' driveway and posted derogatory flyers in their neighborhood. Visits and telephone calls with mother had become stressful for A.F., who suffered from trauma and stressor-related disorder. After one visit, police were called when mother refused to leave the premises. A.F. feared mother would interrogate her about her foster family and would then use that information to harm them. During the hearing on the Bureau's modification petition, mother requested a bonding study — a request the juvenile court denied at that time while noting it may be appropriate in future proceedings.

At the permanency hearing in November 2021, the juvenile court denied mother's request for a continuance so father could complete a paternity test. According to the court, father had notice of the dependency proceedings since the beginning of the case and a continuance was not in A.F.'s best interests given the length of the dependency proceedings — two years — and A.F.'s eagerness to be adopted. The court also found clear and convincing evidence A.F. was likely to be adopted and terminated mother's and father's parental rights. The court determined mother had not

established termination would be detrimental to the child under the parental-benefit exception — applicable where the parent has maintained regular visitation and contact with the child, the child would benefit from the continued relationship, and termination of the relationship would be detrimental to the child. (§ 366.26, subd. (c)(1)(B)(1).)

## DISCUSSION

Mother and father make several challenges to the order terminating their parental rights. They contend mother received ineffective assistance of counsel; the juvenile court abused its discretion by denying mother's request for a bonding study and father's request to continue the permanency hearing; and the Bureau failed to comply with its duty of inquiry under ICWA.[2] We address each argument below.

### I.

Mother contends her counsel provided ineffective assistance by failing to object at the six-month review hearing to the reunification services, which lacked substance abuse treatment. Mother argues this resulted in her failure to address the problems that led to the dependency and ultimately the termination of her services. This argument is forfeited.

Dispositional orders and all subsequent orders in dependency proceedings — except an order setting a permanency hearing under section 366.26 — are directly appealable. (§ 395, subd. (a)(1); *In re Jesse W.* (2001) 93 Cal.App.4th 349, 355.) Juvenile court orders setting section 366.26

---

[2] We deny mother's motion to augment the record to include an order denying paternal aunt's section 388 petition and the clerk's transcript underlying that order because they do not bear on our analysis here. We also do not address parents' arguments made in support of A.F.'s paternal aunt's pending related appeal (A164387). Briefing is not yet complete in that case, nor are the issues relevant to those in this appeal.

hearings are reviewed by extraordinary writ. (§ 366.26, subd. (l)(1)(A).) Unappealed disposition and postdisposition orders are thus "final and binding and may not be attacked on an appeal from a later appealable order." (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150–1151.) Those challenges are waived. (*Id.* at p. 1151.) Essentially, a " 'challenge to the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed.' " (*Jesse W.*, at p. 355.) Where parental rights have been terminated, the waiver rule "prevent[s] a sabotage of the process and preserv[es] the legislative scheme of restricting appeals of final-stage termination orders." (*In re Janee J.* (1999) 74 Cal.App.4th 198, 207.)

Here, mother appeals the order terminating her parental rights, not the order terminating her reunification services and setting a permanency hearing. After the hearing in which the juvenile court determined the Bureau provided mother with reasonable reunification services, terminated the services, and set the section 366.26 permanency hearing, the court mailed mother her rights to writ review. She failed to file any writ. Because mother is attempting to raise an issue — the reasonableness of her reunification services — that could have been raised in a writ petition, she has waived her right to make this challenge on appeal. (*In re Meranda P.*, *supra*, 56 Cal.App.4th at pp. 1150–1151 [declining to address parent's claim of ineffective assistance].)

The circumstances here are insufficient to establish an exception to the waiver rule, contrary to mother's assertions. The waiver rule is applied "unless due process forbids it." (*In re Janee J.*, *supra*, 74 Cal.App.4th at p. 208.) To establish an exception to the rule, the defect must first fundamentally undermine the statutory scheme so that the parents are

6

prevented from availing themselves of the statute's protections. (*Ibid.*)

Second, "defects must go beyond mere errors that might have been held reversible had they been properly and timely reviewed," otherwise the waiver issue would become "a review on the merits." (*Id.* at p. 209.) The issue here — the alleged failure to provide a substance abuse reunification service, of which mother was aware of throughout the proceedings — does not fundamentally undermine the dependency statute's protections. (Cf. *In re M.F.* (2008) 161 Cal.App.4th 673, 682 [erroneous failure to appoint a guardian ad litem affects ability of parent to meaningfully participate in dependency proceedings and is a fundamental defect]; *In re Cathina W.* (1998) 68 Cal.App.4th 716, 722 [failure to receive notice of writ review rights is good cause for excusing noncompliance with writ procedures].) We also reject the contention that mother's claim of ineffective assistance of counsel justifies an exception to the waiver rule. Claims that implicate important constitutional or statutory rights, including ineffective assistance of counsel, do not preclude application of the waiver rule. (*In re Meranda P.*, *supra*, 56 Cal.App.4th at p. 1151.)

Moreover, even if we reached the merits of mother's claim, the result would remain the same. (§ 317.5, subd. (a).) Mother must demonstrate deficient representation — counsel failed to act in a manner expected of a reasonably competent attorney — and that this deficiency resulted in prejudice — a reasonable probability that, but for counsel's failure, she would have obtained a more favorable result. (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98.) An ineffective assistance of counsel claim will only be sustained if the record affirmatively discloses counsel had no tactical purpose for the omission, counsel was asked for a reason but failed to provide one, or

7

there is no satisfactory explanation for the omission. (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 255.)

Nothing in this record affirmatively discloses mother's counsel lacked a tactical purpose for not objecting to the reunification services. (*In re Merrick V.*, *supra*, 122 Cal.App.4th at p. 255.) Mother's case plan required her to undergo substance abuse treatment if she tested positive for substances or missed a drug test. And mother tested positive for amphetamine on a monthly basis from December 2019 to February 2020, yet nothing in the Bureau's reports indicates it followed up on the case plan requirement that mother obtain substance abuse treatment. But mother's counsel may well have failed to object because mother would refuse any such treatment.

Throughout the dependency proceedings, mother maintained she had seizures rather than substance abuse issues. Indeed, mother submitted a letter to the juvenile court in November 2021 highlighting concerns that her counsel failed to submit evidence of her medical history of seizures. In response to a substance abuse self-assessment from a treatment center, mother answered "no" to all questions and thus failed to qualify for inpatient or outpatient treatment programs. The Bureau apparently attempted to address mother's denial by requiring individual therapy to enable her to understand the factors contributing to the dependency and successfully address those issues — a case plan requirement. (*In re T.W.* (2017) 9 Cal.App.5th 339, 348 [agency must engage in continuing efforts to bring a parent into compliance with the court's order].) But mother was resistant to that treatment as well, insisting there was nothing wrong with her. Indeed, mother's therapist closed her case because mother missed appointments and resisted treatment based on her belief she had no issues.

On this record, counsel's failure to object to the lack of substance abuse treatment was not unreasonable. We cannot conclude mother received ineffective assistance of counsel.[3]

## II.

We reject mother and father's argument the juvenile court abused its discretion by denying mother a bonding study. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339 [standard of review for denial of a bonding study].)

Juvenile courts are authorized to appoint a fact-finding expert witness to study the existence and nature of the parent-child bond. (Evid. Code, § 730; *In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1084.) Bonding studies may assist the court in examining whether a parent "can establish that the child would benefit from a continuing relationship with them and that termination would therefore be detrimental to the child" — the beneficial relationship exception to terminating parental rights. (*In re S.R.* (2009) 173 Cal.App.4th 864, 869.) While courts "should seriously consider, where requested and appropriate, allowing for a bonding study or other relevant expert testimony," a bonding study is not required before terminating parental rights. (*In re Caden C.* (2021) 11 Cal.5th 614, 633, fn. 4; *In re Lorenzo C.*, *supra*, 54 Cal.App.4th at p. 1339.) Rather, appellate courts review the evidence in the light most favorable to the juvenile court to determine whether it was reasonable to refrain from ordering a bonding study. (*In re Lorenzo C.*, at p. 1341.)

The juvenile court did not abuse its discretion by denying mother the bonding study. Mother asserts a bonding study was the most appropriate

---

[3] In a separate petition for writ of habeas corpus (A164996), mother has raised a number of claims challenging the competency of her trial counsel. In a separate order, we deny the habeas petition.

method of ensuring a timely expert opinion to assist the court in assessing mother and A.F.'s relationship. Not necessarily so. The Bureau's periodic reports provided a fully developed picture of mother's bond with A.F. (*In re Jennifer J., supra*, 8 Cal.App.4th at p. 1084 [information regarding bonding was available in social study reports].) Although A.F. loved spending time with mother, as early as August 2020, the social worker reported mother and A.F. interacted as friends rather than mother and daughter. And, according to the social worker, that relationship deteriorated after mother began making inappropriate comments and threats regarding A.F.'s foster parents during the supervised visits. In 2021, mother began missing visits and flouting the visitation rules, such as ushering A.F. to her car at the visitation center even though no unsupervised contact was allowed. After one visit when police were required to escort mother away from the visitation center after she refused to leave, A.F. did not want to call mother on the telephone and only wanted one monthly visit due to mother's noncompliance with the visitation rules. A.F. reported no longer wanting a parent-child relationship with mother, viewing her as an extended relative to visit during the holidays rather than a parent.

The juvenile court's ruling — made during the hearing on the Bureau's modification petition and denying the request for a bonding study at that time but noting it might be appropriate in future proceedings — was not a misapplication of the law or misunderstanding of its discretion. The court was aware the permanency hearing was scheduled for the following month. The court stated A.F. was seeking therapy and the therapist's input would be helpful. The therapist's report, noting A.F. experienced anxiety in her daily activities due to mother's absences from scheduled visitation, was admitted

into evidence during the permanency hearing. Given the record, the court's denial of the request for a bonding study was within its discretion.

## III.

We reject father's contention the juvenile court abused its discretion by denying him a continuance of the permanency hearing to allow him to conduct a paternity test. (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 585 [abuse of discretion standard of review for continuance decisions].) Continuances are discouraged in dependency cases and may be granted "only upon a showing of good cause" if it is not contrary to the child's interest. (§ 352, subd. (a); *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604.)

Father fails to establish good cause for the continuance. The juvenile court noted father was dilatory in attempting to establish paternity. Father was on notice since September 2019 that A.F. was detained in foster care. Although father appeared at a September 2020 hearing, he did not request a paternity test until May 2021. That month, he acknowledged his failure to complete the required paternity testing forms or make himself available to be raised to presumed status. He missed three scheduled paternity tests in July, August, and September 2021, but did not reschedule. Moreover, father's genetic link to A.F. is not necessarily relevant to any issues decided at a permanency hearing — determining a long-term placement plan for the child, "the preferred alternative being adoption and termination of parental rights." (*In re Ninfa S.* (1998) 62 Cal.App.4th 808, 811 ["genetics is irrelevant to either the likelihood of [child's] adoption or any of the four enumerated exceptions which might make termination of parental rights detrimental to [the child]"].)

In contrast, delay of the permanency hearing would have interfered with A.F.'s interests in resolving her custody status and having a stable

11

environment.  (§ 352, subd. (a).)  According to A.F.'s therapist, she experienced ongoing anxiety and an inability to engage in age-typical activities due to "adult drama," which included visitation issues with mother. Just before the November 2021 permanency hearing, A.F. expressed frustration with the adoption process, stating she is "just done" and she "just wants to be adopted already."  By that time, she had been in foster care for more than two years — since September 2019 — and she wanted to remain with her foster parents.  In light of A.F.'s interests, there was no abuse of discretion in denying the continuance.

IV.

The parties agree the Bureau failed to fulfill its obligation to conduct an adequate initial inquiry under ICWA — establishing minimum federal standards that a state court must follow before removing a child who is a member of or eligible for membership in an American Indian tribe and biological child of a member.  (25 U.S.C. § 1903(4); § 224.1, subds. (a)–(b); *In re T.G.* (2020) 58 Cal.App.5th 275, 287.)  We agree as well.

Despite having contact with A.F.'s maternal grandfather and maternal aunt when the Bureau was considering relative placements for A.F., the Bureau did not ask these extended family members whether A.F. "is or may be an Indian child" as required as part of its initial ICWA inquiry.  (§§ 224.1, subd. (c), 224.2, subds. (a)–(b); *In re J.S.* (2021) 62 Cal.App.5th 678, 686.) Because the ICWA inquiry was inadequate, we conclude there was insufficient evidence supporting the juvenile court's finding ICWA was inapplicable here.  (*In re A.M.* (2020) 47 Cal.App.5th 303, 314 [ICWA findings reviewed for substantial evidence]; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 408 [court precluded from finding ICWA inapplicable when the lack of

12

evidence that a child has Indian heritage is the result of an inquiry that is inadequate, improper, or lacks due diligence].)

Whether the error was harmless is the subject of dispute, not only amongst the parties but also various appellate courts. Relying on *In re Dezi C.* (2022) 79 Cal.App.5th 769, 774, the Bureau argues its failure to conduct a proper initial inquiry under ICWA is harmless "unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' . . . such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*In re Dezi C.*, at p. 779.) Mother, relying on *In re Y.W.* (2021) 70 Cal.App.5th 542, 556, argues the Bureau's failure to make required ICWA inquiries of extended family members is prejudicial, thus requiring reversal. We disagree with both approaches. "Requiring a parent to prove that the missing information would have demonstrated 'reason to believe' " — as in *Dezi C.* and as urged by the Bureau — "would effectively impose a duty on that parent to search for evidence that the Legislature has imposed on only the agency." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 743 (*Benjamin M.*).) On the other hand, an approach requiring reversal in all cases where an agency erred — as in *Y.W.* and as urged by mother — is not "consistent with the state harmless error rule." (*Benjamin M.*, at p. 743.)

Instead, we adopt the approach articulated in *Benjamin M.* Under that approach, "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Rather than requiring "proof of an actual outcome (that the parent may actually have Indian heritage)," we ask

13

whether the extended family members have meaningful information "relevant to the [ICWA] determination, whatever the outcome will be." (*Ibid*.) This approach appears consistent with section 224.2 and the statutory scheme, which requires inquiry of family members beyond the parents "to obtain information the parent may not have." (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 556.)

Under *Benjamin M.*, we cannot say the Bureau's failure to comply with its initial inquiry duties was harmless. The Bureau contacted A.F.'s maternal aunt and grandfather regarding A.F.'s potential placement. Extended family members were thus readily available and their responses would likely have borne meaningful information, regardless of the outcome of the inquiry. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Thus, we conditionally reverse the juvenile court's order terminating parental rights for a limited remand to ensure compliance with ICWA's inquiry obligations. (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1437.) The order terminating parental rights is subject to automatic reinstatement if, after the Bureau engages in a further inquiry, it is ultimately determined that A.F. is not an Indian child within the meaning of the ICWA. (*In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 908.)

## DISPOSITION

The juvenile court's order terminating parental rights is conditionally reversed. The matter is remanded to permit the Bureau and the court to comply with the inquiry and notice provisions of ICWA and California law. If the court finds A.F. is an Indian child, it shall conduct a new section 366.26 hearing and all further proceedings in compliance with ICWA and related California law. If the court concludes ICWA does not apply, its section 366.26 order shall be immediately reinstated.

14

                                         _____

                                         Rodríguez, J.

I CONCUR:

_____

Petrou, J.

A164101

TUCHER, P.J., Concurring and Dissenting.

I concur with the majority to the extent it affirms orders of the juvenile court, and dissent only from conditional reversal and remand based on the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA). In my view, if the Bureau's failure to question mother's sister and father was ICWA error (see *In re Ezequiel G.* (2022) 81 Cal.App.5th 984 [finding no ICWA error on similar facts]), such error was harmless. Mother had two previous dependency cases in two different states without any known assertion of Native American ancestry. In this case she has filed an ICWA-020 form stating neither she nor A.F. has any known Native American ancestry. Mother was born in San Juan, Puerto Rico and raised by biological relatives. And on appeal, she has made no proffer that there is reason to believe her daughter is, or may be, what ICWA calls an " 'Indian child,' " that is, an unmarried minor who is "a member of an Indian tribe" or "eligible for membership in an Indian tribe and . . . the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) Based on the totality of these facts, I would find any error in the juvenile court's ICWA finding to have been harmless, and would not allow conditional reversal and remand to delay permanency in this case. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779; *In re Y.M.* (Sept. 2, 2022, No. D080349) __ Cal.App.5th __ [2022 Cal.App. Lexis 751].)

TUCHER, P. J.

1