Filed 7/18/25  In re C.V. CA4/2
*See dissenting opinion*

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re C.V., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.H.,<br><br>        Defendant and Appellant. | E083906<br><br>(Super.Ct.No. DPSW2200027)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Sean P. Crandell, Judge.
Reversed.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for
Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

C.V. (Minor), age 14 at the time of the initial referral, came to the attention of the Riverside County Department of Public Social Services (DPSS), following an altercation between Minor and his temporary legal guardian, Clayton S. (guardian). Because the guardian was no longer willing to care for Minor and due to Minor's mother, Amy H. (Mother) being out of state and having a history of substance use, Minor was detained. The Minor was declared a dependent pursuant to Welfare and Institutions Code[1] section 300, subdivisions (b)(1) and (g), and removed from parental custody, and the court ordered family reunification services for Mother.

Because Mother lived out-of-state, DPSS informed her that free services were unavailable to her except for a virtual parenting education course. DPSS referred Mother to "Core Services," but only the parenting education was actually provided to Mother, who completed that requirement of her case plan. Services to assess her substance abuse, counseling, and therapy were inaccessible to Mother outside of California due to her inability to pay, and efforts at establishing supervision under the Interstate Compact for the Placement of Children (ICPC) were unsuccessful.

Instead, DPSS repeatedly informed Mother that notwithstanding her inability to afford to pay for services herself, it was her responsibility to enroll in services, which

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

might be reimbursable.  Mother was unable to access services in the State of Texas, where she eventually moved, without paying out-of-pocket, so at the 18-month review hearing, services were terminated, and a permanent plan of another planned permanent living arrangement (APPLA) was adopted for the Minor, pursuant to section 16501, subdivision (i)(2).  Mother appealed.

On appeal, Mother argues the court's findings (1) that reasonable services were provided is not supported by substantial evidence where the court was informed of her inability to pay for services, and (2) that the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) did not apply was not supported by sufficient evidence where no inquiry was made of either Mother's or the alleged father, Jeffery H.'s (Father) family members to determine if there was any Native American ancestry.  We reverse.

## BACKGROUND

On July 29, 2022, DPSS received a referral with allegations of general neglect.  At the time of the referral, the Minor resided with his temporary guardian, who at one time was in a relationship with Mother and acted as Minor's stepfather.[2]  The Minor's biological Father never married Mother and had never lived with the Minor.  On the date

---

[2] The investigation of a neglect referral in May 2022 revealed that the Minor had been "bouncing around between family members for the last few years" and that in early April, Mother told the guardian to pick up the Minor, who had lived with the guardian since that time.  The allegations of the referral indicated Mother was abusing methamphetamine and she got into an argument with the guardian which led to Mother leaving the Minor with the guardian and the guardian's ultimate application for appointment as the Minor's legal guardian.  At that time, the Minor had not been in school since February, when Mother withdrew him.  Law enforcement was called when the Minor tried to wrestle the guardian, but the allegations were closed as inconclusive.

3

of the referral, an altercation occurred between the guardian and the Minor when the Minor assaulted the guardian for taking away his cell phone as a disciplinary measure.

At this point, the guardian decided he no longer wanted to act as guardian for the Minor because he was no longer able to manage the Minor's aggressive behavior. The guardian complained that Mother interfered with his attempts to discipline the Minor, telling the Minor not to listen to the guardian, which made it a challenge to manage the Minor's defiant behavior. The guardian explained the current incident unfolded when he took the Minor's phone away from the Minor due to the Minor not doing what he was told to do. The Minor kicked the guardian in the back, so the guardian put the Minor in a "full Nelson" hold (a wrestling hold in which one arm was passed under the opponent's arm from behind) to prevent the Minor from kicking the guardian further.

The guardian went to the bedroom, but the Minor followed him, kicked the bedroom door in, and began kicking the guardian again. The guardian called law enforcement to keep the peace, but by the time the police arrived, the Minor was calm, so the Minor did not meet the criteria for a mental health hold. The guardian then took the Minor to Operation SafeHouse,[3] but they would not accept the Minor.

The Minor indicated he wanted to live with Mother and was waiting to be picked up by his Mother. The social worker contacted Mother to follow up on her plan to pick up the Minor and Mother informed the social worker that she had a home in the State of

---

[3] "Operation Safehouse" provides emergency shelter, intervention, and outreach services to runaway, homeless, or other youth in crisis. (https://operationsafehouse.org/ [as of December 3, 2024].)

Arizona, complained about the guardian and blamed the Department for causing the Minor's removal. Mother ended the call but followed up with text messages in which she asserted the guardian, and the guardian's girlfriend were making false claims against Mother, indicated Mother was trying to stay healthy because Mother had cancer, and that Mother was trying to evade a stalker.

Mother also indicated that she was upset with the guardian because he "tagg[ed]" her on social media sites, revealing her location. Mother also revealed that the Minor had epilepsy as a child, although he had not had any seizures since he was a baby and was not on any medication for seizures. The social worker decided the Minor could not be placed with Mother at that time because Mother had not made herself available for an assessment.

The social worker also contacted Minor's adult sister, maternal aunt, and maternal grandfather in her investigation of the referral. The Minor's adult sister described Mother as a psychopath who used drugs and had a habit of dropping the Minor off in the care of others because the Minor's behavior was difficult to manage.

On August 4, 2022, a dependency petition was filed alleging the Minor was a person described by section 300, subdivisions (b)(1) and (g). The supporting facts set forth as paragraphs in the petition alleged that Mother was not a member of the Minor's household and had failed to provide necessaries for the Minor (par. b-1); that Mother has a prior child welfare referral history and failed to benefit from previous services offered (par. b-2); the guardian abuses marijuana (par. b-3); the guardian has a prior child welfare

referral history and failed to benefit from previous services (par. b-4); Mother was unwilling or unable to provide the Minor with a safe and stable home environment (par. g-1); Father's whereabouts were unknown and he was unwilling or unable to provide the Minor with a safe and stable home environment (par. g-2); and the guardian was unwilling or unable to provide the Minor with a safe and stable home environment (par. g-3).

At the detention hearing held on August 5, 2022, the court made prima facie findings that the Minor was a person described by section 300 and terminated the guardianship. The Minor requested to be reunited with his Mother, but due to the Department's inability to assess Mother's living situation in the State of Arizona, the court detained the Minor from his Mother. The Court inquired of Mother if she was aware of Native American ancestry, and Mother indicated she had none. The court found that Minor's Father was merely an alleged father.

On August 29, 2022, the Department filed a first amended petition. The allegations of the supporting paragraphs b-1, g-2, and g-3 remained unchanged, but paragraphs b-2 through b-4 were stricken, along with paragraphs g-1 and g-3. The amended petition added paragraph b-5, alleging Mother's substance abuse as a separate ground.

On October 6, 2022, at the combined jurisdiction and disposition hearing, Mother submitted the issue of jurisdiction on the social worker's reports with a waiver of her trial rights. The court made true findings on the allegations, declared the Minor to be a

dependent of the court, and removed custody of the Minor from Mother and Father. Because Father had been found to be an alleged father, the court determined he was not entitled to reunification services. However, reunification services were ordered for Mother. The court also directed the Department to initiate an ICPC[4] with the State of Arizona forthwith, along with referrals for Mother in Arizona. Finally, the court adopted the ICWA findings.[5]

During the initial six-month review period, the Minor appeared to be doing well in his placement with a nonrelative extended family (NREFM). However, Mother had not yet initiated any services. The report prepared for the status review hearing revealed that Mother had been directed to participate in counseling, parenting education, substance

---

[4] Although an ICPC referral is not mandatory for placement with an out of state parent, or courtesy supervision of an out of state parent, it is authorized. As summarized in the case of *In re John M*. (2006) 141 Cal.App.4th 1564, 1572: "The ICPC also permits a sending public agency to enter into a voluntary agreement with 'an authorized public or private agency in the receiving state' for the performance of services related to the case by the agency in the receiving state. [Citations.] In some situations, the Agency may be able to monitor the situation from California. [Citation.] '[S]tates differ as to whether they will … provid[e] courtesy supervision services. … Th[is] point[s] out the need for early and ongoing communication with the social services agency in the receiving state as to what they will and will not do in a given case. All parties should ensure that such communication is taking place and that [the] necessary information is received before important decisions impacting on the child's welfare are made.'"
Other cases are in accord. (See, e.g., *In re Suhey G*. (2013) 221 Cal.App.4th 732, 742–743 [ICPC was authorized, though not required, to obtain information about the father regarding placement with him out of state].)

[5] The juvenile court did not specify whether it was adopting the prior ICWA findings that it had made at the detention hearing, or if it was adopting the findings recommended by the Department in the jurisdiction reports.

abuse assessment and substance abuse testing, with an agency referred to as "Core Recovery"[6] designated for the counseling and substance abuse components.

The report does acknowledge that "No core services were available at this time, due to the [M]other being an out of county client," although it is unclear if the word "core" was used generically or in reference to the specific service by that name. The social worker therefore provided information regarding virtual parenting education to Mother on March 7, 2023. Nevertheless, even after noting that core services were unavailable to Mother because she was out-of-county, and the referral to Core Recovery which led nowhere, the social worker concluded that Mother had not initiated or completed enrollment and had not contacted DPSS regarding drug testing. There is no indication that the Department attempted to initiate an ICPC cooperation agreement with the State of Arizona, as ordered by the court.

The six-month review report also noted that Mother and the Minor had been communicating via telephone; no in-person visits had taken place because Mother lives in Arizona, although the Department expressed willingness to assist in coordinating in-person visitation when Mother comes into town. However, the Minor indicated he was not interested in speaking or seeing Mother presently because he discovered through social media that Mother had been in the area and had not visited him, which hurt him. The report concluded with a recommendation to extend services to Mother.

---

[6] The various reports of the Department include numerous references to "Core Recovery," but the record does not indicate where it is located, and the case plan does not include a specific reference to this service provider or contact information.

At the six-month review hearing, the court adopted the Department's recommendation and extended reunification services for another six months and reduced Mother's visits to one-time per week.

On September 21, 2023, the Department submitted its status review report for the 12-month review hearing. The report notes that due to the Minor's behavior, on August 10, 2023, he was removed from his NREFM placement and placed in a foster family agency home in San Diego County. By this time, Mother had moved from Arizona to San Antonio, Texas, where she was employed by a construction company and awaiting the transfer of her cosmetology license to the State of Texas.

Regarding Mother's participation in services, the report for the review hearing recited the March 2023 information regarding the lack of core services available to Mother. Regarding those core services, of which only therapy was available to Mother and for which Mother was directed to "reach out to" a San Bernardino agency for counseling, the social worker informed Mother that it was her responsibility to enroll in services. A month later, the social worker informed Mother to call her insurance for a referral to a mental health agency to conduct the mental health assessment.

The status review report included information that Mother had completed parenting education, although the social worker had not yet received a copy of the certificate. Mother was currently living in San Antonio, Texas, where she had moved in mid-July and she had not participated in counseling because she did not have insurance to

pay for services; she no longer had Medi-Cal coverage, and the Department could not assist her in covering the costs because Mother was out-of-state.

Despite being informed of Mother's lack of insurance or funds, the social worker continued to direct Mother to get a therapist "through her insurance if she had insurance" and "she should seek . . . counseling resources at a low cost or free in the San Antonio area."  Mother had also been advised to call "211" for a list of court-approved providers. However, this telephone number is apparently affiliated with Riverside County Department of Mental Health.  (See https://rivcodpss.org/mental-health-resources, [as of Dec. 5, 2024] recommending that potential clients refer to https://www.rcdmh.org or call 211.)  A link to a list of local therapists was provided to Mother.[7]  The report states that Mother was also provided with substance abuse assessment resources, but that Mother had not participated.  However, this information appears to refer to Mother's status prior to the March 2023 status review, where the latest information was that Mother had been referred to Core Recovery for substance abuse treatment and general counseling in Phoenix, Arizona.  There was no current information regarding substance abuse assessment services for Mother in the State of Texas.

At the 12-month status review hearing held on October 5, 2023, the court found Mother's progress was minimal, but extended services for another six months.  The court directed the Department to initiate an ICPC with the State of Texas.

---

[7] The social worker obtained the link with this information by contacting an "ACT clinician."  There is no explanation of "ACT" and we have been unable to determine the identity of the office or agency to which ACT refers.

On March 25, 2024, the social worker submitted its status review report for the 18-month review hearing. The report notes that the Minor's most recent placement had been unsuccessful, resulting in his removal from that placement on September 26, 2023, due to his behavior, and his new placement on October 27, 2023, in San Bernardino. In addition, the Minor was prescribed psychotropic medication for his "impulsive behaviors[, and] mood changes that may jeopardize his current placement."

The report also acknowledged Mother was struggling financially, despite her report of working two jobs, and her lack of medical insurance. Mother explained that the State of Texas considered her earnings too high to qualify her for substance abuse services, meaning she would have to pay out-of-pocket. Although the Department followed up with Mother on November 29, 2023, regarding updates, and learned that Mother had found "a place called CHCS," she had not figured out "how to get down there." The record does not indicate if the social worker obtained any information about "CHCS" and there is no explanation of the type of service it provides or if it was an approved service provider. There is no indication the social worker provided any Texas-based referrals to Mother.

On April 5, 2024, at the initial date set for the 18-month review hearing, Mother set the matter for a contested hearing, after informing the court that the Department had not yet initiated an ICPC with the State of Texas as previously ordered. On May 3, 2024, the Department submitted an addendum report that indicated the Minor had been moved once again and was now placed with a previous NREFM in Riverside County.

Regarding the ICPC, the social worker informed the court that it was likely that the State of Texas would deny the ICPC because of Mother's lack of case plan progress. The social worker acknowledged that Mother had consistently indicated she could not participate in services as she could not afford to pay for them, although she had been informed that DPSS could reimburse her. The social worker recommended that Mother's services be terminated.

On May 8, 2024, the court conducted the contested 18-month review hearing. Mother's counsel argued that the Department had not provided reasonable services and sought an additional six months of services. The court found that reasonable services had been provided but that Mother had failed to participate regularly and make substantive progress in the court ordered treatment plan, and there was no substantial probability of return of the Minor if given additional services.

The court also found that because the Minor was now 16 years old, there was a compelling reason for determining that a hearing under section 366.26 was not in the best interest of the Minor, so the court identified a permanent plan of APPLA, with a goal of placement with a fit and willing relative, as his permanent plan. The court also concluded that ICWA did not apply.

On May 15, 2024, Mother appealed.

**DISCUSSION**

1. *Whether There is Substantial Evidence to Support the Court's Reasonable Services Finding*

Mother argues there is insufficient evidence to support the trial court's finding that reasonable services were provided to promote reunification with the Minor. We agree the Department did not make adequate efforts to assist Mother in accessing services out of state when it was aware that Mother did not have the ability to pay for the services—with or without reimbursement.

We review for substantial evidence a court's factual findings supporting an order terminating reunification services. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688.) Under this standard, "we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.'" (*Id.*, at pp. 688–689.)

Pursuant to section 366.22, subdivision (a)(3), the court shall determine by clear and convincing evidence whether reasonable services have been offered or provided to the parent or legal guardian. Because a finding of reasonable services must be made by clear and convincing evidence, we bear in mind the clear and convincing evidence standard where required when examining the evidence supporting the trial court's findings. (See *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

To support a finding that reasonable services were offered or provided to the parent, "'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult.'" (*In re A.G.* (2017) 12 Cal.App.5th 994, 1001, citing *In re Riva M.* (1991) 235 Cal.App.3d 403, 414.) Reunification services should be tailored to the particular needs of the family. (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 793.) We review a reasonable services finding for substantial evidence. (*In re T.G.* (2010) 188 Cal.App.4th 687, 697.)

"The adequacy of the reunification plan and of the department's efforts to provide suitable services is judged according to the circumstances of the particular case." (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1011.) A parent's "difficulty meeting the case plan's requirements does not excuse the agency from continuing its effort to bring Mother into compliance with the court's orders." (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451; *In re T.W.-1* (2017) 9 Cal.App.5th 339, 348.)

In *In re T.W.-1*, the reviewing court held that the father's out-of-state location did not excuse the Department's failure to identify substance abuse and housing as service objectives, its failure to provide information about the two identified programs, and its failure to set up more than one telephone visitation with his children. (*In re T.W.-1, supra*, 9 Cal.App.5th at pp. 346–347.)

Similarly, in the present case, Mother's main obstacle to reunification was her residence out-of-state since before the referral, and her inability to pay for services out-of-pocket, but the Department still referred Mother to programs within California (aside from the virtual parenting class, which Mother completed)[8] and made no effort to identify program resources in Texas.

Throughout much of the reunification period of this dependency, the Department was aware that Mother no longer had Medi-Cal for health insurance, and that she did not have health insurance through her employment. Yet the status review reports for the 12-month and 18-month review hearings appear to ignore this fact by repeatedly referring to information that it had advised Mother to use her insurance to pay for services and that the Department would try to seek reimbursement. Insofar as the Department does not challenge Mother's financial inability to pay for services, its repeated references in reports regarding its advice that Mother pay out-of-pocket for services in hopes of later reimbursement was an illusory service.

Also throughout the case, Mother consistently related to the social worker that she could not afford to pay for the services of a therapist, or a substance abuse assessment and treatment service providers. And although the juvenile court had ordered the Department to initiate an ICPC to obtain cooperation from first the State of Arizona, and then the State of Texas, the Department did not timely reach out to Texas. By the time

[8] The record indicates the social worker sent Mother a link for therapy with an "ACT clinician," but it does not include the usual documentation that we typically see to confirm the information or that it was sent to Mother.

the social worker initiated the contact, the passage of time without any services available to Mother left her in a catch-22 situation: Texas would not participate in providing services because Mother had not made progress in her plan, but Mother could not make progress in her plan due to her inability to pay for services.

Section 362.8, subdivision (a), provides, "(a) At a review hearing where a parent or guardian's participation in reunification or family maintenance services is considered by the court, including, but not limited to, hearings pursuant to Sections 364, 366.21, 366.22, 366.25, and 388, the parent or guardian shall not be considered to be noncompliant with the court-ordered case plan when the court finds that the parent or guardian is unable to pay for a service or that payment for a service would create an undue financial hardship for the parent or guardian, and the social worker did not provide a comparable free service that was accessible and available to the parent or guardian to comply with the case plan during the period subject to the court's review." Despite Mother's inability to pay for services, no comparable free services were provided due to the Department's delay in seeking cooperation of the State of Texas in a timely manner.

Here, the court's reasonable services finding found Mother noncompliant with a service plan that did not address or account for her out-of-state residence. Despite the court's musings at the hearing about whether the Department should be required to provide reasonable services even if a parent lived in a foreign country, the fact remains that the Department made no efforts to provide a comparable free service that was accessible and available to the Mother. As it was, Mother received less in the way of

16

services than an incarcerated parent would receive.  We conclude that the reasonable services finding was not supported by substantial evidence, but that does not end our inquiry.

Section 366.22, subdivision (b)(2), authorizes an additional six months of services where a child is not returned to the parent at the permanency review hearing and the court finds reasonable services have not been provided.  Additionally, looking at the best interests of the Minor, we note that the presenting problem that led to this dependency was Minor's oppositional and physically aggressive behavior towards his caretaker, which continued throughout the dependency resulting in several failed placements and the administration of psychotropic medication.  Mother was not offered any services in how to deal with such a child, and no amount of counseling or therapy for Mother could reasonably address the particular causes that led to the dependency, much less ameliorate them within the time remaining before the Minor reaches adulthood.

For this reason, the finding that reasonable services were provided was not supported by clear and convincing evidence, requiring reversal of the reasonable services finding, and Mother is entitled to an additional six months of services.  (§ 366.22, subd. (b)(2)(A).)

2. *Whether There is Substantial Evidence to Support the Court's Finding That ICWA Does Not Apply*

Mother argues there is insufficient evidence to support the juvenile court's finding that ICWA did not apply.  The Department agrees that a limited reversal is appropriate.

17

We will vacate the order and direct continuing compliance with California's statutory provisions designed to implement and enhance the ICWA (25 U.S.C. § 1901 et seq.).

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child," the Indian custodian and the Indian child's tribe have the right to intervene and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA. (25 U.S.C. §§ 1911(c), 1914; see § 224, subd. (e).)

To facilitate the congressional intent, under California law, the juvenile courts and the child protective agencies, "(but not parents)[, have] an 'affirmative and continuing duty to inquire' whether a child in the dependency proceeding 'is or may be an Indian child.'" (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741–742, disapproved of on a different point in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1150, 1152, fn.18, quoting § 224.2, subd. (a).) "That duty to inquire begins with [the] initial contact [citation] and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G.* (2020) 58 Cal.App.5th 275, 290, citing § 224.2, subds. (a)-(c).) This includes asking the child, parents, legal

guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

Recent amendments to section 224.2 have clarified that this duty of inquiry of extended family members is not limited to situations in which the child is removed due to an emergency and extends to situations in which the child is removed by means of a protective custody warrant, issued pursuant to section 340. (§ 224.2, subd. (b); see Assem. Bill No. 81 (2023-2024 Reg. Sess.) (Stats. 2024, ch. 656, § 3, eff. Sept. 27, 2024).)

In the present case, the Department and the court inquired of Mother, the guardian, and the Minor. However, the Department had been in contact with other family members, including the Minor's adult sister, a maternal aunt, and the maternal grandfather. There is no indication that the social worker asked those relatives about possible Native American ancestry.

"When there is an inadequate inquiry and the record is underdeveloped, it is impossible for reviewing courts to assess prejudice because we simply do not know what additional information will be revealed from an adequate inquiry. We therefore hold that an inadequate Cal-ICWA inquiry requires conditional reversal of the juvenile court's order terminating parental rights with directions to the agency to conduct an adequate inquiry, supported by record documentation." (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1125.)

Here, because the dependency is ongoing, conditional reversal is not required. (*In re S.H.* (2022) 82 Cal.App.5th 166, 171.)  Instead, the finding that ICWA does not apply is vacated while the juvenile court and DPSS continue their duty to inquire..

### DISPOSITION

The order after hearing establishing a permanent plan of APPLA, pursuant to section 16501, subdivision (i)(2), is reversed and the matter is remanded for further proceedings pursuant to section 366.22, subdivision (b)(2)(A).  The juvenile court's finding that ICWA does not apply is vacated with directions that the juvenile court and DPSS comply with the continuing duty of inquiry pursuant to section 224.2.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
P. J.

I concur:

FIELDS _____
J.

20

[*In re C.V.*, E083906]

MENETREZ, J., Dissenting.

The only argument that appellant Amy H. (Mother) raises concerning reasonable services is that the Riverside County Department of Public Social Services (DPSS) should have paid for Mother's services in Texas. Mother's argument fails for at least three reasons. First, the legal authorities cited by Mother do not establish that DPSS has an obligation to pay for out-of-state services, and I am not aware of any authority for that proposition. Second, DPSS offered to pay for Mother's services by reimbursement. That was reasonable, and the record contains no evidence that it was even possible for DPSS to pay for Mother's services in Texas in any other way. Third, Mother herself claimed that (1) she made too much money to qualify for the services available in her area, but (2) she was saving her money to buy a car. DPSS had no obligation to pay for Mother's services in order to enable her to devote her earnings to buying a car, and DPSS's failure to do that does not make DPSS's services unreasonable. Because Mother's only argument on the reasonable services issue lacks merit, I would affirm the juvenile court's termination of Mother's reunification services.

Mother's only meritorious argument is that the juvenile court abused its discretion by finding that the inquiry concerning the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) was adequate and proper. We should therefore vacate that finding but

1

otherwise affirm.  (See *In re Dominick D.* (2022) 82 Cal.App.5th 560, 563-564; *In re Dezi. C.* (2024) 16 Cal.5th 1112, 1169, fn. 5.)  Accordingly, I respectfully dissent.

MENETREZ _____

J.